

# In the Missouri Court of Appeals
# Eastern District

DIVISION TWO

| | | |
|---|---|---|
| In Re: M.F., by her parents and guardians Carl Fields and Beverly Fields, | ) ) ) | No. ED103936 |
| Appellant, | ) ) | Appeal from the Circuit Court of St. Louis County |
| vs. | ) ) | |
| | ) | Honorable Gloria Clark Reno |
| CHARLES KEITH SCHAFER, in his physical Capacity as Director of the Missouri Department Of Mental Health, | ) ) ) | |
| Respondent. | ) ) | FILED: January 24, 2017 |

M.F. ("Consumer"), a consumer of services[1] provided by the Missouri Department of Mental Health ("DMH"), through her guardian parents (Consumer and her parents are collectively referred to simply as "Appellants" herewithin), appeals from DMH appeals referee's decision denying Consumer consultation services under the redefined Behavior Therapy for Consumer's orientation and mobility services, which Consumer has received for more than a decade at an approved rate of pay. The decision allows the services instead to be provided and billed under a different classification code that pays $27 less per hour for the highly specialized services than it allowed before. We reverse and remand.

---

[1] A "consumer" is an individual (client, resident, patient) receiving DMH-funded services directly from an agency, 9 CSR 10-5.200.1(B), or contracted services directly from any program or facility. 9 CSR 10-5.206.1(A).

## I. Background

Consumer is a woman in her late twenties who receives services from the St. Louis Regional Tri-County Office of DMH. She has been diagnosed with autism, blindness, rumination disorder, hypotonia, hypothyroid, language disorder, seizure disorder, and irritable bowel syndrome. Consumer also engages in frequent aggression, maladaptive behaviors and self-injurious behaviors to the point of needing hospitalization. An in-home Independent Support Living arrangement was initiated for Consumer in 2009 to assist the family in caring for Consumer's complex medical and behavioral needs.

In addition to the supported living arrangement, Consumer receives music therapy, occupational therapy, speech and language pathology, physical therapy, an orientation and mobility specialist, and blindness services through her participation in the Home and Community Based Services Comprehensive Medicaid Waiver. DMH's Division of Developmental Disabilities administers five Medicaid Home and Community Based Waiver programs for individuals with intellectual and developmental disabilities.[2] One of the five is the Comprehensive Waiver, which is the only waiver that provides residential and individualized supported living services.

---

[2] Authority for the Division of Developmental Disabilities waivers is the result of federal law enacted by Congress in 1981 that added a new section to the Social Security Act in 1915(c). Under Home and Community-based waivers, a state may use Medicaid funding for home and community-based services provided only to a target group of people who have intellectual and developmental disabilities and whose care needs would otherwise require services in an institution. The Division of Developmental Disabilities uses general revenue funds and local county dollars to match federal dollars to pay for Home and Community-based waiver services. "Home & Community Based Waivers," Missouri Department of Mental Health, available at http://dmh.mo.gov/dd/progs/waiver/index.html (Nov. 1, 2016).

The five waivers are determined by the Division of Developmental Disabilities regional office initially and annually thereafter to require an "Intermediate Care Facilities for individuals with Intellectual disability" ("ICF/ID") level of care if waiver services are provided. The ICF/ID level of care requires that an individual have mental retardation or a related condition as defined in federal rule 42 C.F.R. 435.1010, plus a need for the level of care provided in an ICF/ID. In addition, it requires a determination that if an individual does not receive services under a waiver, the individual is likely to seek admission to an ICF/ID. Missouri's Medicaid Waivers for Individuals who have Developmental Disabilities (Fact Sheet), available at http://dmh.mo.gov/docs/dd/waiverfactsheet.pdf (Nov. 1, 2016). Missouri's state Medicaid agency, MoHealthNet, a division of the Department of Social Services, drafts and submits the applications for waivers to the federal government Centers for Medicare and Medicaid Services for approval, and the Division of Developmental Disabilities performs the day-to-day operations of the waivers.

2

Within the Comprehensive Waiver, Person Centered Strategies Consultation ("PCSC") is one service, along with applied behavioral analysis, which addresses behavioral situations. Waiver codes for positive behavior supports and behavior therapy were eliminated. The PCSC definition in the Comprehensive Waiver is as follows:

> This service involves consultation to the individual's support team to improve the quality of life for the individual through the development and implementation of positive, proactive, and preventative Person Centered Strategies and a modified environment and/or lifestyle for the individual. Person Centered Strategies Consultation involves evaluating a person's setting, schedule, typical daily activities, relationship with others that make up the supports for the individual, including paid staff/paid family and unpaid natural supports. The evaluation leads to changes in strategies such as rearranging the home to reduce noise and stimulation, adding a personal quiet area to get away from annoying events, teaching skills to promote more positive interactions between the individual and supporting staff or family . . . .
>
> This is a short-term service that is not meant to be ongoing, the typical duration of the service is 12 months or less . . . .

This is a service put in place to improve an individual's quality of life by reducing crisis and behavioral problems.

> The provider qualifications for PCSC are as follows:
>
> This service can be provided by an individual or an agency who is a Qualified Person Centered Strategies Consultant. A Person Centered Strategies Consultant is a person with a bachelor's degree with special training, approved by the Division, related to the theory and practice of Person Centered Strategies for individuals with intellectual and developmental disabilities, or Applied Behavior Analysis and implementation of Person Centered Approaches.
>
> Training will be approved by Division of DD staff if the training syllabus describes positive, proactive interventions strategies, quality of life variables and evaluation of improvement strategies and system wide implementation of evidence based practices. This includes for example: The Tools of Choice Training with additional coaching of tools training; College course work for example within a special education department involving implementation of Tiered Supports strategies; training from a state agency on implementation of tiered supports and person centered strategies and quality of life.
>
> Consumer has received Orientation and Mobility Services or Blindness Services

("OMS/BS") for nearly 15 years, first provided as special education and related services and

3

through her participation in the Sara Lopez Home and Community Based Services Comprehensive Medicaid Waiver[3] program. After aging out of the school system and the Sara Lopez Waiver, Consumer began receiving her OMS/BS from Certified Orientation and Mobility Specialists and certified Blindness Professionals through her participation in the Home and Community Based Services Comprehensive Medicaid Waiver. Every year, Appellants submit a new Individual Support Plan ("ISP") to DMH for approval, including the supporting evidence for Consumer's continued need for OMS/BS. She was continually approved for 52 units or 13 hours of OMS/BS per month, which were reimbursed to her providers at a rate of approximately $67 per hour. The Comprehensive Waiver does not have a service code specific to OMS/BS, but throughout the years, a service code was used to bill at the market rate for qualified certified Orientation and Mobility specialists and certified Blindness Professionals since at least 2005.

In August 2012, Appellants submitted Consumer's ISP for the plan year of October 1, 2012, to September 30, 2013, to the Utilization Review Committee ("URC"), which reviews initial ISPs and budgets to ensure an individual's needs are being addressed and that levels of funding for individuals with similar needs are similar statewide. Appellants did the same for every year prior, for review and approval of the services requested therein. Appellants did not receive a decision until October 3, 2012, three days after the expiration of Consumer's October 1, 2011, to September 30, 2012 ISP. In a letter dated October 3, 2012, Julia Hillyer ("Director") of the St. Louis Regional Tri-County Office of DMH ("Facility") informed Consumer that her request for "Orientation and Mobility; Blindness through Positive Behavior Supports – PBS" was denied because "Orientation and Mobility; Blindness" is not a "waiver service that can be provided under PBS as PBS is a short term/temporary support." Director recommended that

---

[3] The Sara Lopez waiver is also known as the Missouri Children's Developmental Disabilities ("MOCDD") Waiver requiring a consumer to be under the age of 18 among other criteria. This is one of the five Medicaid Home and Community Based waiver programs for individuals with intellectual or other developmental disabilities.

4

Appellants "look into" obtaining OMS and BS through Rehabilitation Services for the Blind despite the fact that Consumer was ineligible for services from Rehabilitation Services for the Blind because she is unemployable due to the severity of her disability.

Appellants appealed on October 5, 2012, arguing that Consumer's health and safety would be jeopardized without the OMS/BS, as would the health and safety of others. Appellants argued that Consumer needs the services to live safely and independently in the community. After a brief interruption in the services, DMH reinstated them for a period of 30 days (through November 10, 2012) and gave Consumer the caveat that OMS/BS needed to be re-coded as Community Specialist ("CS")[4] because it is "the only waiver code that is not time sensitive."[5] A meeting took place on October 23, 2012, with Director and the Facility's Provider Relations Coordinator John Fischer. Consumer's father and brother attended, as did two members of Consumer's support staff, and Consumer's Board Certified Behavioral Analyst Jessica Harrison, and Kevin Hollinger, Consumer's orientation and mobility provider for many years. Although making it clear that OMS and BS were vital to Consumer's ability to access all of the services she received under the Comprehensive Waiver and thus, her ability to live independently in the community, Mr. Hollinger communicated that he could not continue to provide OMS/BS to Consumer if the services were billed under the CS and reimbursed at a rate of $40 per hour. He indicated that such a rate was not reasonable given the education and certifications required to provide OMS and BS services and that it was approximately half the rate paid to others in the COMS/CBPs in the St. Louis area. Consumer's team made it clear that their one requirement for any provider of OMS and BS to Consumer was that the provider have the requisite certifications for a COMS/CBP, and did not require that the OMS and BS be provided by Mr. Hollinger.

_____

[4] Community Specialist is another Comprehensive Waiver service.
[5] While the PCSC pay rate is approximately $67 per hour, the Community Specialist rate is approximately $40 per hour, or $27 per hour less.

5

Director issued a second decision on November 9, 2012, that stated, "Orientation and Mobility Services for [Consumer]" would be billed under the CS service code at a rate of $40 per hour because the "O and M services that Mr. Hollinger has been providing to [Consumer] do not fit the PBS/PCSC definition." At no time, in either Director's October 2, 2012 decision, or in Director's November 9, 2012 decision did Director ever state OMS and BS services could no longer be provided through PBS/PCPS because Mr. Hollinger was not a qualified provider. Director did state that OMS and BS could no longer be provided through PBS/PCPS because they do not meet the PBS/PCSC service definition. Director did not explain why OMS and BS did not fit the PBS/PCPS definition. However, prior correspondence from Director to Appellants, and subsequent evidence obtained during the appeal, clarify that Director believed OMS and BS could not be provided through PBS/PCPS because it is a temporary/short-term service. Director did not explain why OMS and BS fit the CS definition other than the fact that it is "the only waiver code that is not time sensitive."

After Appellants learned of Facility's plan to limit OMS and BS to the lesser reimbursement rate, they began looking for a COMS/CBP who would provide OMS/BS at this rate of $40 per hour. They contacted Consumer's service coordinator Nimishia Gohil for assistance in finding a provider who would be able to provide OMS and BS under the CS service code at a $40 per hour rate, but Ms. Gohil was unable to find a provider who would provide services at that rate. Appellants appealed Director's decision on November 30, 2012, wherein Appellants informed Director that there were no qualified COM/CBP who were able to provide OMS and BS under the CS service code and that Director's decision that OMS and BS "did not fit the PBS/PCSC service code" amounted to an effective denial of those services. The letter also reiterates that every member of Consumer's team agrees that OMS and BS are medically necessary services and without them, Consumer's health and well-being would suffer. On

6

December 2, 2012, Director confirmed her receipt of Appellants' appeal of the denial of

Orientation and Mobility and Blindness Services through Positive Behavior Supports (PBS).

In its decision Dated March 6, 2014, the Appeals Tribunal's Referee reviewed the two

decisions of Director, defining Person Centered Planning Process as well as Service Plan, and

found that the head of the Facility had the burden of proof and burden of going forward to either

establish that the applicant does not meet the stated statutory criteria for services eligibility or

that the individual has so improved that she no longer would benefit from the level of services

which had previously been provided.  9 CSR 45-2.020(3)(C)(5).  The Referee further found that

evidence provided on behalf of Consumer, such as a gastroenterologist's belief that reduction of

Behavioral Analysis services will result in emotional or behavioral regression, is not persuasive

because he is not an expert in behavioral analysis as applied to persons with developmental

disabilities.  The Referee similarly found unpersuasive Consumer's other letters presented by

professionals who were not qualified experts in behavioral analysis and did not differentiate as to

the facts or expertise upon which the asserted belief was premised that reduction in Behavioral

Analysis Services will result in emotional or behavioral regression.  The Referee further found

that opinions of Behavioral Services Interventions' owner, as well as those of an employee and

director, were of limited persuasive weight based on the economic interest and personal bias to

continue the current level of services.  The Appeals Tribunal affirmed the decision of the

Director finding that the Orientation and Mobility Services provided by Kevin Hollinger could

be billed under the waiver code of Community Specialist but were not authorized under the

Positive Behavior Supports/Person Centered Strategies Consultant waiver code, based on the

following reasoning:

> The Facility did meet its burden of proof with respect to Orientation and Mobility
> services provided by Kevin Hollinger.  [Director] did not state that Orientation
> and Mobility Services were denied, nor did she reduce the authorized units of
> such services.  The discussion of Orientation and Mobility services was in the

context of Kevin Hollinger's provision of those services. Mr. Hollinger had been providing those services to [Consumer] since at least 2009. Mr. Hollinger attended the meeting on October 29, 2012, and provided his resume. Evidence does not support a finding that [Consumer], through her parents or any other member of her team, suggested an alternate provider of Orientation and Mobility services. [Director] did not determine that Orientation and Mobility Services could only be provided to [Consumer] at the reimbursement rate of forty dollars ($40.00) per hour. Rather, the final determination stated that the services Kevin Hollinger had been providing to [Consumer] did not fit the Positive Behavior Supports/Person Centered Strategies Consultant definition. Orientation and Mobility services provided by Kevin Hollinger could be billed under the waiver code of Community Specialist, and the reimbursement rate for a Community Specialist is approximately forty dollars ($40.00) per hour. [Appellants] argue[] that monetary considerations played a role in the Facility's decision, a contention the Facility disputes. Regardless, Mr. Hollinger does not meet the provider qualifications in the Waiver for a Person Centered Strategies Consultant, nor do the services he provides meet the Waiver code service specification for Person Centered Strategies Consultation. [Appellants'] evidence that the Missouri Department of Elementary and Secondary Education or Missouri school districts choose a different service's definition or provider specification for educational services does not change the conclusion reached under the DMH Comprehensive Waiver.

On April 3, 2014, Consumer appealed the Referee's decision to the circuit court pursuant to Section 536.100, RSMo. The circuit court upheld the Appeals Tribunal's Referee's order on December 7, 2015. Appellants again appealed on January 8, 2016, to this Court.

## II. Discussion

Appellants raise five points on appeal, each alleging the DMH appeals Referee's decision was in error. In their first point, Appellants allege the Referee's decision was arbitrary and made upon unlawful procedure when it encompassed issues outside the scope of the administrative appeal and improperly placed the burden of proof on Appellants.

Second, Appellants allege the Referee's decision that Hollinger was not a qualified PBS/PCSC provider was unsupported by competent and substantial evidence when DMH failed to introduce any factual support for this conclusion.

Third, Appellants contend the Referee's decision was unsupported by competent and substantial evidence and unauthorized by law when DMH failed to introduce any factual support

8

for its decision that OMS/BS did not fit the PBS/PCSC service definition and when DMH imposed arbitrary time limitations in violation of the Medicaid Act's reasonable-standards requirement.

Fourth, Appellants allege the Referee's decision that DMH did not deny OMS/BS was unsupported by the evidence when DMH's arbitrary change to the CS service code amounted to less than half of the market rate for OMS/BS providers and no providers were willing to offer OMS/BS at such a low rate.

Fifth and finally, Appellants allege the Referee's decision is unauthorized by law when it violates the Rehabilitation Act of 1972 and the Americans With Disabilities Act by significantly increasing Consumer's risk of institutionalization by arbitrarily reducing the rate for OMS/BS and by denying a reasonable accommodation to DMH's rules, policies, and procedures.

A. Standard of Review

Appellate review of a decision in an agency contested case is set forth in Section 536.140. Under this standard, DMH's decision will be upheld unless it (1) is in violation of constitutional provisions; (2) is in excess of the statutory authority or jurisdiction of the agency; (3) is unsupported by competent and substantial evidence upon the whole record; (4) is, for any other reason, unauthorized by law; (5) is made upon unlawful procedure or without a fair trial; (6) is arbitrary, capricious or unreasonable; or (7) involves an abuse of discretion. Section 536.140.2. On appeal from the circuit court's review of an agency's decision, this Court reviews the action of the agency, not the action of the circuit court. Albanna v. State Bd. of Registration for Healing Arts, 293 S.W.3d 423, 428 (Mo. banc 2009). This Court must decide whether, considering the whole record, there is sufficient competent and substantial evidence to support the agency's actions. Id. "This standard would not be met in the rare case when the [agency's decision] is contrary to the overwhelming weight of the evidence." Id. (quoting Lagud v. Kansas

9

City Bd. of Police Comm'rs, 136 S.W.3d 786, 791 (Mo. banc 2004)). The decision of the agency on factual issues is presumed to be correct until the contrary is shown and the court is obliged to sustain the administrative order if it is supported by substantial evidence on the record as a whole. Oakes v. Mo. Dept. of Mental Health, 254 S.W.3d 153, 157 (Mo. App. E.D. 2008). The court must defer to the agency's determination on the credibility of witnesses. Martin Marietta Materials, Inc. v. Bd. of Zoning Adjustment of Cass County, 246 S.W.3d 9, 19-20 (Mo. App. W.D. 2007). However, when the agency's decision involves a question of law, the court reviews the question de novo. Oakes, 254 S.W.3d at 157.

In an appeal from a decision as to an applicant's eligibility for services or an individual's eligibility for continued services, "the appeals referee shall rest his/her decision solely on the evidence presented at the hearing. The referee shall not review any documents concerning the applicant's/individual's eligibility that are not properly submitted on the record during the hearing . . . ." 9 C.S.R. 45-2.020(3)(C)(4). Additionally, "[t]he head of the facility shall have the burden of proof and burden of going forward to either establish that either the applicant does not meet the state's statutory criteria for services eligibility or that the individual has so improved that s/he no longer would benefit from the level of services which had been previously provided." 9 C.S.R. 45-2.020. "While inartfully worded, it is clear that the burden was on the [DMH] to produce evidence" of whether Consumer was eligible for consultation orientation and mobility and blindness services, which Consumer has received for the last several years at an approved rate of pay. See Weisenborn ex rel. Shoemaker v. Mo. Dept. of Mental Health, 332 S.W.3d 288, 301 (Mo. App. W.D. 2011).

**B. No substantial and competent evidence on how OMS/BS failed to fit the PBS/PCSC service definition.**

Throughout this appeal, Appellants argue the DMH decision was in error based on the standard of review and the DMH's burden of proof. DMH does clearly state that it and the

10

Facility have the burden of proof and the burden going forward; however, a review of the evidence and the decision does not appear to place that burden on DMH.

Although the Director's and the Appeals Tribunal's decisions vary somewhat on the reasons for denying services for Consumer, we begin our focus by finding the record does not contain competent and substantial evidence to support a decision that orientation and mobility services and blindness services did not fit the PBS/PCSC service definition. Director stated her decision to deny OMS/BS through the PBS/PCSC service code was due, in part, to Mr. Hollinger's lack of qualifications, but looking beyond that reason to the Appeals Tribunal's finding that OMS/BS did not fit the PBS/PCSC service definition and was not a time limited service as required, we find the agency failed to support its conclusion by substantial and competent evidence.

Throughout the hearing testimony, DMH failed to elicit any evidence from its witnesses most familiar with the Comprehensive Waiver about why OMS/BS did not fit the PBS/PCSC service definition. DMH's Chief Behavior Analyst, Dr. Teresa Rodgers, actually suggested the opposite conclusion – that OMS/BS did fit the PBS/PCSC service definition. Dr. Rodgers testified that PBS/PCSC is a service that is used to evaluate an individual's quality of life, implement opportunities for choice, eliminate elements of coercion and assess positive proactive strategies. She indicated the service enables the reduction of crisis and behavioral problems by improving the individual's quality of life. When faced with evidence that Consumer's OMS/BS had a direct effect on instances of crisis and behavioral elements, gave Consumer more opportunities for choice, eliminated elements of coercion, and helped Consumer's quality of life by giving her access to the community or other services in her Individual Service Plan, DMH failed to establish that OMS/BS did not fit the PBS/PCSC service definition such that Consumer did not meet the state's statutory criteria for services eligibility. To the contrary, Mr. Hollinger

11

testified he provided blindness training to Consumer's support staff at least once a month and also provided emergency trainings when new staff was hired or when Consumer exhibits new and potentially dangerous behaviors that must be addressed. Mr. Hollinger assessed Consumer's physical environment and natural supports and trained Consumer's family and staff to utilize blindness techniques to improve quality of life and reduce the occurrence of maladaptive behaviors. Without such services, no evidence was presented demonstrating that Consumer's quality of life would be maintained.

Although DMH concluded that the definition of person centered strategies consultation "is a short term service that is not meant to be ongoing, the typical duration of service is to be twelve months or less," the evidence is overwhelming that this is not a "typical" case. During her testimony, Dr. Rodgers merely stated that the time limitation for PBS/PCSC was "*shooting for* a one year or less time frame" (emphasis added). DMH continues to argue on appeal that PCSC is "*generally* for a year or less because a person's quality of life improves with the strategies people are using to support the person, there should be no further need for an ongoing service." (emphasis added). However, the evidence showed that Mr. Hollinger had been paid for providing services to Consumer since 2005. Consumer's family and Mr. Hollinger believe his services are necessary and should continue to be ongoing. Even Director admitted that Consumer in fact still needed Orientation and Mobility and Blindness services. However, because the "typical duration" for PCSC is 12 months or less, the extended need for services should not automatically disqualify Consumer from falling into the "atypical" scenario for PCSC services. The evidence instead showed that Consumer is not a typical client; Consumer was the only DMH consumer who received OMS/BS out of the 728 consumers who had a diagnosis of blindness or vision impairment, out of DMH's approximately 33,092 consumers. In addition to Consumer's blindness, she has also been diagnosed with many other issues, including autism,

12

rumination disorder, hypotonia, hypothyroid, language disorder, seizure disorder, and irritable bowel syndrome. She engages in frequent aggressive behavior, maladaptive behaviors and self-injurious behaviors to the point of needing hospitalization. Based on the substantial and competent evidence, it is clear that Consumer is not a typical case and therefore does not fall into a typical or general duration of service plan without substantial and competent evidence explaining the same.

Because DMH failed to meet its burden of proof, Appellants' third point is granted. The agency's decision must be reversed and Consumer's benefits shall be granted.

## C. No substantial and competent evidence that changing service code was not an effective denial of services.

While DMH attempts to cloud its decision in whether it in fact denied services by stating that Director never stated that OMS were denied and never reduced the authorized units of such services, Director's final decision still effectively denied the services at issue in this appeal based on the competent and substantial evidence.

Director's denial of services was modified to simply change the billing code for OMS to the community specialist billing code.[6] However, the evidence was clear that the community

---

[6] Another Comprehensive Waiver service is Community Specialist, which definition is as follows:

> A community specialist is used when specialized supports are needed to assist the individual in achieving outcomes in the service plan. Community specialist services includes professional observation and assessment, individualized program design and implementation and consultation with caregivers. This service may also, at the choice of the individual designated representative, include advocating for the individual, and assisting the individual in locating and accessing services and supports within their field of expertise.

> The services of the community specialist assists the individual and the individual's caregivers to design and implement specialized programs to enhance self-direction, independent living skills, community integration, social, leisure and recreational skills . . . .

> Community specialist services provide specialized assistance for an individual that may not be provided in a more specific service. It is used for something outside of typical services, for example, helping an individual become more integrated into the community in some kind of special way. The provider must have a bachelor's degree from an accredited university or college, or a registered nurse or associate's degree, plus three years of experience to direct or consult.

specialist rate of $40/hour was much lower than the rate at which OMS had been provided for nearly a decade. The evidence on the record was that Mr. Hollinger, the only certified orientation and mobility specialist and certified blindness professional contracted with DMH, was unwilling to continue providing services at the much reduced rate of pay. We agree with Appellants that it was not Appellants' burden to suggest an alternative provider of orientation and mobility services. Although the Referee states "evidence does not support a finding that [Consumer], through her parents or any other member of her team, suggested an alternative provider of Orientation and Mobility services," this statement fails to mention the evidence that Appellants and Ms. Gohil, Consumer's DMH service coordinator, were unable to find anyone able to provide these services to Consumer. Additionally, DMH's evidence was clear that Orientation and Mobility and Blindness services were necessary for Consumer; Director admitted that Consumer in fact needed Orientation and Mobility and Blindness services. But the evidence was overwhelming in that DMH's alternative solution to code it as Community Specialist was an effective denial of that necessary service without any practical application. DMH argues that there was no showing that every provider was called and refused to provide services for Consumer again places the burden on Appellants despite acknowledging the opposite. Further, on December 2, 2012, Director confirmed her decision on appeal as the "denial of a [sic] ongoing service (Orientation and Mobility: Blindness through Positive Behavior Supports – PBS)." Accordingly, the decision that DMH did not deny Consumer's Orientation and Mobility services when it changed the waiver code under which services could be provided by Mr. Hollinger was unsupported by the substantial and competent evidence and

_____

While the PCSC pay rate is approximately $67.00 per hour, the Community Specialist rate is approximately $40.00 per hour, or $27.00 per hour less.

14

against the weight of the evidence too. Whereas DMH failed to meet its burden of proof, the agency's decision is reversed. Appellants' fourth point is granted.

**D. No substantial and competent evidence that Mr. Hollinger lacked qualifications to provide services under the PCSC code.**

We will additionally address DMH's reason for denying Consumer's services based on Mr. Hollinger's lack of qualifications to provide PBS/PCSC services. Again, the Appeals Tribunal's Referee improperly placed the burden of proof on Appellants rather than DMH.

In its decision, the Referee reached conclusions regarding Mr. Hollinger's qualifications that were not discussed in either the Director's November denial or Appellants' appeal, which never referenced that services were being denied based on Mr. Hollinger's qualifications. DMH's conclusion that Mr. Hollinger lacked the qualifications to provide services under the PCSC code is also not supported by the evidence. The record indicates that Mr. Hollinger's resume was reviewed prior to the DMH's decision, but no DMH decision cites evidence to support the conclusion that he does not meet the PBS/PCSC provider qualifications. DMH called several witnesses familiar with the provider qualifications contained within the Comprehensive Waiver application, but none explained why Mr. Hollinger did not meet the qualifications of a PBS/PCSC provider.

Director claims she determined Mr. Hollinger was not a qualified PBS/PCSC provider because his bachelor's degree did not include a "specific certification in Person Centered Strategies or Applied Behavioral Analysis." However, "specific certification" in Person Centered Strategies or Applied Behavioral Analysis is not a requirement for PBS/PCSC providers according to DMH's provider requirements. Nevertheless, the evidence presented was that Mr. Hollinger has state certifications in Visual Impairment, Learning Disabilities, Mental Retardation and Behavioral Disorders, and a certification in OMS from the Academy for Certification of Education and Rehabilitation Professionals. DMH, however, failed to ask Mr.

15

Hollinger about any of his qualifications at the hearing and whether his certifications would encompass Person Centered Strategies or Applied Behavioral Analysis.

Provider qualifications for a PBS/PCSC provider also indicates such providers should be trained in the theory and practice of Person Centered Strategies for individuals with intellectual and developmental disabilities, or Applied Behavior Analysis and implementation of Person Centered Approaches. Again, DMH failed to meet its burden when it provided no evidence that Mr. Hollinger does not possess such training or provided no evidence describing what types of training would be acceptable under the PBS/PCSC provider requirements. Despite subjecting Mr. Hollinger to cross-examination by DMH, DMH never asked him if he had the training described in the PBS/PCSC provider qualification description.

Witnesses' conclusions, where devoid of any factual support, do not rise to the level of substantial and competent evidence. Hutchings v. Roling, 151 S.W.3d 85, 89 (Mo. App. E.D. 2004). Nor is evidence substantial where a reasonable mind would not accept it as sufficient to support a particular conclusion, even when granting all reasonable inferences. Id. Thus, Director's and Referee's mere conclusion that Mr. Hollinger does not meet the PBS/PCSC provider qualifications, when devoid of any factual support, do not rise to the level of substantial and competent evidence required. Additionally, a reasonable mind would not accept such conclusions as sufficient to support Director's decisions that Mr. Hollinger was not qualified, even when granting all reasonable inferences to the agency. Accordingly, Appellants' second point is granted and DMH's determination that Mr. Hollinger does not meet the PBS/PCSC provider qualifications is reversed.

Having granted Appellants' second, third, and fourth points to dispose of this appeal, we need not discuss their remaining points.

16

### III.  Conclusion

The judgment of the DMH is reversed for its failure to meet its burden of proof.  This cause is remanded with directions to the DMH to approve Consumer's continued OMS/BS at the previous amount of 52 units or 13 hours of OMS/BS per month, and reimbursed to her providers at a rate of approximately $67 per hour.

_____
ROY L. RICHTER, Judge

Sherri B. Sullivan, P.J., concurs.
Colleen Dolan, J., concurs.

17