

# In the Missouri Court of Appeals
## Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| M.F., By Her Parents and Guardians, CARL FIELDS and BEVERLY FIELDS, | ) ) ) | No. ED108648 |
| Respondents, | ) ) | Appeal from the Circuit Court of St. Louis County |
| vs. | ) ) | 18SL-CC00697 |
| MARK STRINGER, in his official Capacity as Director of the Missouri Department Of Mental Health, | ) ) ) ) | Honorable Lorne J. Baker |
| Appellant. | ) | Filed: February 9, 2021 |

Angela T. Quigless, P.J., Kurt S. Odenwald, J., and James M. Dowd, J.

### Introduction

This appeal concerns a claim for attorney's fees and costs[1] brought pursuant to § 536.087[2] by M.F., a profoundly disabled woman, against the Missouri Department of Mental Health (DMH). M.F. was the prevailing party in the prior action she brought against DMH which ended with this Court's decision in *In re M.F. v. Schafer,* 508 S.W.3d 194 (Mo. App. E.D. 2017) in which we held that DMH's denial of certain medically-necessary services to M.F. was

---

[1] While the amount of attorney's fees and costs incurred in her first appeal that resulted in our decision in *In re M.F. v. Schafer,* 508 S.W.3d 194 (Mo. App. E.D. 2017) was $94,172.51, the full amount before us is $112,577.51 which represents the $94,172.51 together with $12,655.00 in fees and costs associated with the appeal to the circuit court, and $5,750.00 in fees and costs associated with this second appeal to this Court.

[2] All statutory references are to RSMo 2012 unless otherwise indicated.

unsupported by competent and substantial evidence and we therefore ordered those services reinstated. The issue before us in this case is whether DMH's wrongful denial of those services was still "substantially justified" in which case M.F. is not entitled to prevailing party costs and attorney's fees.

To establish it was "substantially justified," DMH's burden is to demonstrate that its decision was "clearly reasonable." On the record before us, the two purported justifications DMH proffered to deny M.F. the services in question were not only unsupported by competent and substantial evidence, but DMH either knew or through a minimally in-depth investigation could have readily discovered their lack of merit and pretextual nature. Thus, DMH failed to carry its burden to demonstrate that its reasons for denying M.F. those services were "clearly reasonable." Therefore, M.F. is entitled to be reimbursed for the reasonable attorney's fees and costs incurred during the administrative, circuit court, and appellate proceedings related to this matter and the agency's decision denying those fees and costs is reversed.

**Background**

M.F. is a 33-year old woman diagnosed with several medical, behavioral, mental, and developmental disorders and disabilities. For approximately 15 years prior to the 2012 commencement of this litigation, M.F. had been receiving various medically-necessary support services including Orientation and Mobility Services and Blindness Services (OMS/BS)[3] through

---

[3] Orientation and Mobility Services are services provided to blind or visually impaired individuals by qualified personnel to enable those students to attain systematic orientation to and safe movement within their environments in school, home, and community; and include teaching the following, as appropriate: 1) spatial and environmental concepts and use of information received by the senses (such as sound, temperature and vibrations) to establish, maintain, or regain orientation and line of travel (e.g., using sound at a traffic light to cross the street); 2) to use the long cane or a service animal to supplement visual travel skills or as a tool for safely negotiating the environment for individuals with no available travel vision; 3) to understand and

2

DMH's St. Louis Regional Tri-County Office[4] as a participant in the Comprehensive Medicaid Home and Community-Based Services Waiver program (the comprehensive waiver program). The comprehensive waiver utilized by M.F. is the only one of the five Medicaid waiver programs administered by DMH's Division of Developmental Disabilities that provides supported-living services designed to allow those with intellectual and developmental disabilities like M.F. to remain in their homes or in group homes rather than to be institutionalized or placed in long-term care facilities such as hospitals or nursing homes.[5]

In 2009, DMH approved M.F.'s first in-home Independent Support Living (ISL) plan, which provided assistance to her and her family in caring for M.F.'s complex medical and behavioral needs. That ISL plan included the OMS/BS services at issue here among various other therapies and services M.F. utilized through her participation in the comprehensive waiver program.

M.F.'s ISL plan year generally ran from October 1 through September 30 of the following year. DMH approved M.F.'s ISL plans for the plan years 2009 - 2010, 2010 - 2011, and 2011 - 2012 without issue. In 2012, M.F. submitted her ISL plan for the 2012 - 2013 plan year to DMH, which included her request for the usual OMS/BS services. On October 3, 2012, three days after her previously-approved services for plan year 2011 - 2012 had expired and the services requested in her new ISL plan were to have already begun, DMH denied M.F.'s ISL

---

use remaining vision and distance low vision aids; and 4) other concepts, techniques, and tools. 34 C.F.R. § 300.34(c)(7) (2021).

[4] Prior to her enrollment in the comprehensive waiver program, M.F. received OMS/BS services through her participation in the Sara Lopez Home and Community Based Services Comprehensive Medicaid Waiver program. The Sara Lopez waiver program requires individuals to be under the age of 18, so M.F. aged out of eligibility for that waiver program in 2005.

[5] see "State of Missouri Developmental Disabilities Waivers Manual," Missouri Department of Mental Health, available at https://DMH.mo.gov/dev-disabilities/programs/waiver/manuals (Aug. 17, 2020).

plan. DMH's denial letter, issued by Julia Hillyer, director of DMH's St. Louis office, informed M.F. that her plan was denied because her OMS/BS services were not waiver services that could be provided under PBS/PCSC [Positive Behavior Supports[6]/Person Centered Strategies Consultation[7]] as PBS/PCSC is "a temporary/short term service […] generally 12 months or less."

On October 5, 2012, M.F. appealed Director Hillyer's decision to DMH's appeals tribunal arguing that her health and safety, and the health and safety of others, would be jeopardized without the OMS/BS services. After a brief interruption in her OMS/BS services, DMH reinstated them for a period of 30 days through November 10, 2012, but Hillyer advised M.F. that any future OMS/BS services would be approved only if they were coded as

---

[6] Positive Behavior Supports (PBS) are approaches that offer respectful and effective ways to help individuals, families, and organizations increase quality of life and prevent or reduce behavioral risk. PBS services teach and help to sustain skills and change environments without the use of punishment. The goals of PBS are to teach skills, increase independence, and encourage respected roles and thereby enhancing the individual's inclusion in the community. "Positive Behavior Supports," Missouri Department of Mental Health, available at https://DMH.mo.gov/media/pdf/positive-behavior-supports (Oct. 9, 2019).

[7] Person Centered Strategies Consultation involves consultation to an individual's support team to improve the quality of life for the individual through the development and implementation of positive, proactive, and preventative PCS and a modified environment and/or lifestyle for the individual. PCSC involves evaluating a person's setting, schedule, typical daily activities, relationship with others that make up the supports for the individual, including paid staff/paid family and unpaid natural supports. The evaluation leads to changes in strategies such as rearranging the home to reduce noise and stimulation, adding a personal quiet area to get away from annoying events, teaching skills to promote more positive interactions between the individual and supporting staff or family. This is a short-term service that is not meant to be ongoing, the typical duration of the service is 12 months or less. "State of Missouri Developmental Disabilities Waivers Manual," Missouri Department of Mental Health, available at https://DMH.mo.gov/dev-disabilities/programs/waiver/manuals (Aug. 17, 2020).

Community Specialist (CS)[8] services as opposed to PBS/PCSC services because CS services are assigned "the only waiver code that is not time sensitive."

On October 23, 2012, a meeting took place among the parties. In attendance were Director Hillyer and another DMH staff member along with various members of M.F.'s family and support team, including Kevin Hollinger, M.F.'s Certified Orientation and Mobility Specialist/Certified Blindness Professional (COMS/CBP), who had been providing M.F.'s OMS/BS services and therapies since at least 2005. Hollinger stated that reclassifying his services as CS-coded service as opposed to PBS/PCSC-coded service would effectively deny those services to M.F. because the hourly reimbursement rate would drop from $67 to $40. Hollinger told Director Hillyer that neither he, nor any other COMS/CBP provider in the St. Louis area would be able to provide M.F. with OMS/BS services if they were billed at that reduced rate.

In addition to M.F.'s other on-going services and therapies, the OMS/BS services were portrayed to DMH, both before it denied those services and during M.F.'s appeal, as being medically necessary for M.F.'s well-being, health, and safety as well as the safety of those

---

[8] Community Specialist (CS) refers to another category of service provided by the comprehensive waiver. Such service is used when specialized supports are needed to assist the individual in achieving outcomes in the ISL plan. CS services include professional observation and assessment, individualized program design and implementation and consultation with caregivers. This service may also, at the choice of the individual designated representative, include advocating for the individual, and assisting the individual in locating and accessing services and supports within their field of expertise. The services of the CS assist the individual and the individual's caregivers to design and implement specialized programs to enhance self-direction, independent living skills, community integration, social, leisure and recreational skills. Providers of CS services must have a Bachelor's degree from an accredited university or college plus one year experience; be a Registered Nurse (with an active license in good standing, issued by the Missouri State Board of Nursing); or have an Associate's degree from an accredited university or college plus three years of experience. The service may be provided by either an individual provider or an employee of an agency. "State of Missouri Developmental Disabilities Waivers Manual," Missouri Department of Mental Health, available at https://DMH.mo.gov/dev-disabilities/programs/waiver/manuals (Aug. 17, 2020).

around her, and critical to her ability to continue to live in the community as opposed to being institutionalized. This information and testimony was provided by each member of M.F.'s medical and therapy support team including family members and Hollinger. E.g., M.F.'s treating gastroenterologist, Dr. Lynda Brady, described some of M.F.'s medical conditions such as rumination disorder (manifested by the spontaneous regurgitation of food), and testified to a reasonable degree of medical certainty that M.F.'s improved physical health was due to the OMS/BS she received and that without these medically-necessary services, M.F.'s health would likely deteriorate with the recurrence of conditions such as the rumination disorder causing a likely return of her disruptive and maladaptive behaviors all of which would make institutionalization increasingly likely.

On November 9, 2012, one day before the temporary extension of M.F.'s OMS/BS services was set to expire, Director Hillyer issued a second decision letter again stating that DMH would only approve the OMS/BS services if they were billed at the CS service rate of $40 per hour. Hillyer's November letter raised for the first time the rationale that Hollinger was not a "qualified provider" of OMS/BS services, in addition to reiterating the earlier rationale that the OMS/BS services he had been providing to M.F. were not meant to be long-term based on Hillyer's reading of the definition of PBS/PCSC in the comprehensive waiver. Hillyer's decision to change the billing code on the services Hollinger was providing M.F. effectively denied those services in accordance Hollinger's previous warning.

M.F. filed a consolidated appeal of Director Hillyer's and DMH's October 2, 2012, and November 9, 2012, decisions to DMH's appeals tribunal. After a series of hearings in November 2013, and January and February 2014, the referee denied her appeal. In December 2015, after the circuit court upheld the appeals tribunal's decision, M.F. filed her appeal to this Court. In *In*

6

*re M.F. v. Schafer*, we reversed and remanded finding that DMH's justifications for denying M.F. the medically-necessary OMS/BS service were not supported by substantial and competent evidence.

After we ruled in favor of M.F. on all claims, M.F. timely filed an application for attorney's fees and costs. An evidentiary hearing took place on September 13, 2017, and on December 29, 2017, the referee issued the decision denying M.F.'s application finding that DMH's decision to deny the OMS/BS services was substantially justified. M.F. appealed that decision to the circuit court which reversed and entered judgment in favor of M.F. This appeal follows.

**Standard of Review**

In an appeal following a circuit court's judicial review of an administrative agency's decision, this Court reviews the *agency's* decision, not the circuit court's. *Albanna v. State Bd. of Registration for Healing Arts*, 293 S.W.3d 423, 428 (Mo. banc 2009) (emphasis added). Section 536.140 provides seven grounds for the review of an agency's action, but only one of them - whether the agency's action is unsupported by competent and substantial evidence upon the whole record - is relevant to this case. § 536.140.2.3; *see also, State Board of Registration for the Healing Arts v. McDonagh*, 123 S.W.3d 146, 152 (Mo. banc 2003).

In conducting this review, we examine the whole record looking to whether there is sufficient competent and substantial evidence to support the agency's decision or if the agency's decision is contrary to the overwhelming weight of the evidence. *McDonagh*, 123 S.W. 3d at 152. The agency's decisions on factual issues and determinations regarding the credibility of witnesses are presumed correct unless the contrary is shown, and we are obliged to sustain the administrative order if it is supported by substantial evidence on the record as a whole. *Oakes v.*

*Mo. Dept. of Mental Health*, 254 S.W.3d 153, 157 (Mo. App. E.D. 2008). We will only reverse in the rare case where the agency's decision is contrary to the overwhelming weight of the evidence. *McDonagh*, 123 S.W. 3d at 152.

**Discussion**

**I.     DMH's decision to deny OMS/BS services to M.F. was not substantially justified.**

In its sole point on appeal, DMH argues that although M.F. was the prevailing party in this administrative matter, she is not entitled to attorneys' fees and costs because DMH's November 2012, decision was substantially justified. DMH continues to assert that Director Hillyer's interpretation of the comprehensive waiver's definition of PCSC - that the OMS/BS services Hollinger provided M.F. were too long in duration to qualify and be billed as PBS/PCSC services - was substantially justified based on the facts as they reasonably appeared to her at the time. Similarly, DMH maintains it was substantially justified based on Director Hillyer's determination that Hollinger did not meet the qualifications to provide PBS/PCSC services.[9]

The burden is on DMH to show substantial justification. 9 C.S.R. 45–2.020 (2012); *see also Greenbriar Hills Country Club v. Dir. of Revenue,* 47 S.W.3d 346, 354 (Mo. banc 2001). To

---

[9] PCSC can be provided by an individual or an agency who is a Qualified PCS consultant. A PCS consultant is a person with a bachelor's degree with special training, approved by the Division, related to the theory and practice of Person Centered Strategies for individuals with intellectual and developmental disabilities, or Applied Behavior Analysis and implementation of PCS. Training will be approved by Division of DD staff if the training syllabus describes positive, proactive interventions strategies, quality of life variables and evaluation of improvement strategies and system wide implementation of evidence based practices. This includes for example: The Tools of Choice Training with additional coaching of tools training; College course work for example within a special education department involving implementation of Tiered Supports strategies; training from a state agency on implementation of tiered supports and PCS and quality of life." "State of Missouri Developmental Disabilities Waivers Manual," Missouri Department of Mental Health, available at https://DMH.mo.gov/dev-disabilities/programs/waiver/manuals (Aug. 17, 2020).

show it was substantially justified, the agency must demonstrate a reasonable basis in both law and fact for its action. *Greenbriar Hills,* 47 S.W.3d at 354. "An agency 's action must be *clearly* reasonable not just marginally reasonable." *Baker v. Dept. of Mental Health,* 408 S.W.3d 228, 232 (Mo. App. W.D. 2013) (emphasis in original).

Section 536.087.3 provides:

"[w]hether or not the position of the state was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by an agency upon which a civil action is based) which is made in the agency proceeding or civil action for which fees and other expenses are sought…"

*Dishman v. Joseph*, 14 S.W.3d 709, 718 (Mo. App. W.D. 2000) (citing § 536.087.3). Thus, a hearing on the application for attorney's fees and costs is not to be treated as a motion for reconsideration or to relitigate the factual issues the agency previously litigated and lost. *Dishman,* 14 S.W.3d at 718. DMH is bound by our resolution of the factual and legal issues in *In re M.F. v. Schafer, supra.*

At the same time, DMH's prior loss on the merits does not necessarily create a legal presumption that the position DMH took with respect to M.F.'s OMS/BS services was not substantially justified. § 536.087.3; *see also Baker,* 408 S.W.3d at 234. An agency's decision in the underlying case can be wrong but still be well-founded in law and fact. *Dishman*, 14 S.W.3d at 718-19; *see also Hyde v. Dep't of Mental Health*, 200 S.W.3d 73, 76 (Mo. App. W.D. 2006). But, it is the agency's burden to demonstrate that its decision, though wrong, was still "clearly reasonable." *Greenbriar Hills,* 47 S.W.3d at 354.

We turn now to the two rationales raised by DMH to justify its denial of OMS/BS services to M.F. Upon minimal scrutiny, neither rationale is clearly reasonable.

**1. DMH's first rationale - OMS/BS is a short-term service that may only be authorized for twelve months or less.**

Ignoring, for a moment, the elephant in the room - that M.F. received, and DMH repeatedly approved, OMS/BS services for at least 15 years - the notion that M.F.'s OMS/BS medically-necessary services needed to be terminated because of a one-year time limit is entirely unsupported in the record before us. We acknowledge the language in the waiver that Director Hillyer's cited in her denial letter that spoke to the one-year time limitation as an agency goal, but we reject the rigid time limitation Hillyer sought to impose based on that language. Moreover, the overwhelming weight of the record demonstrated that Director Hillyer was wrong.

At the first hearing on M.F.'s matter before DMH's appeals tribunal, DMH's own witness, chief behavioral analyst Dr. Teresa Rodgers, who has assisted DMH in writing the waiver service definitions, testified that while DMH "shoot[s]" for a one-year time limitation on PBS/PCSC services, all waiver services are meant to continue as long as they are medically necessary. Dr. Rodgers further testified that an individual's ISL plan determines which services are medically necessary, and that she would <u>never</u> recommend a withdrawal of services if it would jeopardize the health and safety of the applicant.

That M.F.'s OMS/BS services were medically necessary for M.F.'s health and safety was not only undisputed but DMH had repeatedly admitted that such was the case for over a decade by approving M.F.'s yearly ISL plans. From this record, we reach the unmistakable conclusion that not only was DMH's decision to deny at the 11th hour M.F.'s medically-necessary services, but its decision was not substantially justified in that it had no support in the record. DMH could

10

have readily consulted Dr. Rodgers, a member of its own staff and an expert in waiver service codes, but there is no indication that it did so or, if it did, that it heeded her opinion.

**2. DMH's second rationale - that M.F.'s long-time OMS/BS services provider Kevin Hollinger lacked the necessary qualifications to provide such services.**

DMH was not just wrong about Hollinger's qualifications; the record also demonstrates that DMH failed to conduct any meaningful inquiry which would have shown that Hollinger was fully qualified to provide OMS/BS services. Again, we note the incredulity of DMH's position given that it approved and paid Hollinger for at least 5 years to provide these services to M.F.

DMH belatedly raised Hollinger's qualifications in its second denial-of-services letter. Director Hillyer claimed that Hollinger was not a qualified provider because his bachelor's degree did not include a "specific certification in Person Centered Strategies or Applied Behavioral Analysis." However, such a "specific certification" is not a requirement for PBS/PCSC providers according to DMH's own rules. *see* n.8, *supra*. Moreover, the record shows that Hollinger has state certifications in visual impairment, learning disabilities, mental retardation, and behavioral disorders, and a certification in OMS from the Academy for Certification of Education and Rehabilitation Professionals. All of this information was readily available had Director Hillyer and DMH done any meaningful investigation.

We find it noteworthy that at the first hearing, DMH called several witnesses familiar with the provider qualifications contained within the comprehensive waiver, but none explained how or even if Hollinger failed to meet the qualifications as a PBS/PCSC provider. And during its cross-examination of Hollinger, DMH did not ask him about his qualifications or whether he had any of the training described in the PBS/PCSC provider qualification description.

11

In sum, conclusions devoid of any factual support do not rise to the level of substantial and competent evidence. *Hutchings v. Roling*, 151 S.W.3d 85, 89 (Mo. App. E.D. 2004). And we find Director Hillyer's conclusions regarding the comprehensive waiver's supposed time limitations and Hollinger's purported lack of qualifications, upon which Hillyer based the decision to deny M.F.'s medically-necessary services, to be completely devoid of evidentiary support and overwhelmed by the weight of the evidence in this record.

Point One is denied.

## II.    Bad faith.

While whether an agency has acted in bad faith is not a mandatory consideration in connection with an application for the recovery of attorney's fees and costs under § 536.087, it is often a relevant and significant factor in the "substantial justification" determination. *Dishman*, 14 S.W.3d at 717; *see also Baker*, 408 S.W.3d at 233. Here, to resolve this appeal, we need not reach a conclusion whether DMH exhibited bad faith in connection with its handling of M.F.'s case. But we are troubled by its conduct in this case particularly its lack of investigation and its disregard of the overwhelming evidence that these services were medically necessary to M.F.'s health and safety and her ability to avoid being institutionalized.

## III.    The award of attorney's fees and costs here is consistent with Missouri public policy.

Section 536.087 is patterned after the Equal Access to Justice Act (EAJA). 28 U.S.C.A. § 2412 (1982). Congress passed the EAJA to encourage relatively impecunious private parties to challenge abusive or unreasonable agency behavior by relieving such parties of the fear of incurring large litigation expenses. *Cooling v. Dept. of Social Services,* 491 S.W.3d 253, 261-62 (Mo. App. E.D. 2016) (citing *United States v. 1,378.65 Acres of Land*, 794 F.2d 1313, 1314–15 (8th Cir. 1986)). The intent of both the EAJA and § 536.087 is to require careful scrutiny of

12

agency and court proceedings and to increase the government's accountability in such matters. *Cooling*, 491 S.W.3d at 261-62. The public policy goal is to ensure the legitimacy and fairness of government and the law so that contests between private citizens and the government are decided on the merits of the matter and not on the costs. *Id.*

Over the past 8 years, M.F. has incurred over $100,000 in attorney's fees and costs in order to maintain the same level of services she had been receiving from DMH without issue for years before this dispute began. DMH's decision to deny these services which are medically necessary for M.F.'s own safety and well-being, as well as the safety and well-being of those around her, was not substantially justified. Thus, an award of these attorney's fees and costs is legally correct and fully consistent with Missouri public policy that dictates that M.F. should not bear such additional burden.

## Conclusion

Therefore, this Court affirms the circuit court's judgment reversing the DMH's decision denying M.F.'s application for attorney's fees and costs incurred during the administrative phase of the case. This cause is remanded to the circuit court to consider M.F.'s stayed application for reasonable attorney's fees and costs in the amount of $12,655.00 incurred in the appeal to the circuit court, as well as M.F.'s claim for $5,750.00 in attorney's fees and costs incurred in connection with this appeal to this Court, and to direct DMH to pay the approved attorneys' fees and costs.

_____
James M. Dowd, Judge

Angela T. Quigless, P.J., and
Kurt S. Odenwald, J., concur.

13