

# In the Missouri Court of Appeals
## Eastern District
### DIVISION TWO

| | | |
|---|---|---|
| NATHAN T. COOLING, | ) | No. ED102627 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | |
| DEPT OF SOCIAL SERVICES, | ) | Honorable Michael F. Stelzer |
| FAMILY SUPPORT DIVISION, | ) | |
| | ) | |
| Appellant. | ) | Filed: March 15, 2016 |

## I. Introduction

The State of Missouri, Department of Social Services, Family Support Division (the "Division") appeals the judgment of the circuit court reversing the decision of the Director of the Department of Social Services (the "Director"). The Director denied Nathan T. Cooling's ("Cooling" or "Father") application for attorney's fees after he prevailed in the underlying administrative agency actions. The circuit court awarded Cooling attorney's fees in the amount of $24,100, pursuant to Section 536.087, RSMo 2000.[1] On appeal, the Division argues that Cooling is not eligible for the awarded attorney's fees because: (1) Cooling did not prevail in an adversary proceeding in a contested case where the Division was represented by counsel; (2) the Division was substantially justified in taking the underlying agency actions; and (3) Cooling failed to present competent and substantial evidence of special factors in Section 536.085

---

[1] All further statutory references are to RSMo 2000 as supplemented, unless otherwise noted.

justifying the award. We reverse the Director's decision denying Cooling's application for attorney's fee, and reverse the circuit court's judgment as to the amount awarded and remand.

## II. Factual and Procedural Background

Tara Neumann ("Mother") and Cooling married and had one child ("L") together. They divorced in September 2000. The divorce decree ordered Cooling to pay $340 per month in child support directly to Mother. In 2009, Mother applied for public assistance from the Temporary Assistance for Needy Families program ("TANF") to help her provide for L and her two other children. As a requirement for participation in TANF, Mother filled out an application for child support services (the "CSS Application"). In the application, Mother stated she did not know if a court had ever ordered child support for L. Mother also stated Father never paid any child support. Mother signed the application, certifying the veracity of the information provided. Without verifying Mother's averments, the Division started paying Mother $342 per month in TANF in April 2009. In relation to the CSS Application, the Division opened a child support case to establish paternity of L and to obtain a court order for support. The Division requested that Mother provide copies of documents, including the marriage license and divorce decree for verification. Mother failed to do so. As a result, the Division terminated Mother's TANF benefits in September 2010 for non-cooperation. The Division did not further investigate Mother's statements in the CSS Application.

In October 2011, the Division sent Cooling a form letter to establish paternity of L. Cooling did not respond. The Division sent Cooling another form letter on December 28, 2011. Cooling called the Division in early January 2012, stating that his divorce judgment ordered him to pay child support and he recently gained physical custody of L.

2

The Division subsequently received a copy of the divorce judgment, confirming the existence of the child support order and the fact that Father was to pay Mother directly, not the Family Support Center or the court. However, the Division, still relying on Mother's statements the Division failed to substantiate, concluded Cooling owed $45,900 in child support arrears and had not made payments to the Family Support Payment Center or the court. The Division did not perform any further investigation into whether Cooling had actually made any support payments to Mother.

On February 8, 2012, the Division began enforcement by issuing a Notice of Consumer Report Agency Referral (the "CRA Referral Notice"), informing Cooling of its intention to report his arrearage. On February 21, 2012, Cooling again called the Division, stating that he had custody of L and did not owe any child support. Cooling, through retained counsel, filed a timely request for an administrative hearing pursuant to Section 454.470 and contested the Division's CRA Referral Notice. At the same time, Cooling furnished the Division with a copy of a written agreement (the "Agreement") between Mother and Cooling, dated December 17, 2011. In the Agreement, Mother acknowledged full payment from Cooling of all child support obligations through December 17, 2011, after which Cooling took physical custody of L, thereby terminating Cooling's support obligation. The Division subsequently suspended the CRA Referral pending a hearing.

Based on the Agreement, the Division amended its support calculation, giving credit to Cooling for support payments made directly to Mother in the amount of $35,054. The Division, however, determined that Cooling still owed $5,066 to the State of Missouri (the "State") under Mother's TANF assignment (the "state debt"). On March 19, 2012, while Cooling's hearing for the CRA Referral Notice was pending, the Division issued an Order to Withhold Income (the

3

"OTW") to URS Corporation, ordering it to withhold $100 of Cooling's income per month. As a result, the Division collected sums from Cooling's income. Through his counsel, Cooling requested an administrative hearing on the OTW. The hearing was scheduled for September 26, 2012.

On March 29, 2012, an administrative hearing was held on the CRA Referral Notice (the "CRA hearing"). Cooling was present and represented by counsel. Cooling testified he had paid all child support payments directly to Mother from the start of the child support order until the date of the Agreement. Mother was also present and confirmed Cooling's testimony. Mother also testified the TANF benefits she received were not for L but for two other children unrelated to Cooling. The Division's position was presented by a Child Support Specialist, an agency witness. The agency witness testified Mother received TANF from April 2009 through August 2010 and Cooling had not made any payments through the Family Support Payment Center, therefore Cooling owed TANF reimbursement for that period.

On May 19, 2012, the Hearing Officer determined that Cooling owed a total of $5,440 to the State of Missouri even though she found, "Father credibly testified that he did not know about the state aid" and "Mother . . . agreed that she received the direct payments from Father." The Hearing Officer reasoned that "Father has set forth no legal authority by which this administrative tribunal can relieve him of the responsibility to repay the TANF amounts owed to the State." Two days later, the Division issued the CRA Referral Notice again.

On June 5, 2012, Cooling filed with the agency a "Motion to Modify Decision Entered May 19, 2012," setting forth the legal authority as suggested by the Hearing Officer. The Hearing Officer subsequently issued a decision, rescinding her prior determination of May 19, and concurrently sought a written response from the Division. After the Division failed to

4

respond, the Hearing Officer concluded that Cooling did not owe any further money and entered an Amended Decision on September 18, 2012 (the "Amended Decision"). Subsequently, Cooling filed a motion to dismiss the OTW hearing in light of the Amended Decision. A week later, the OTW hearing was cancelled, the Division withdrew from the OTW action, and refunded Cooling the money the Division took as a result of the OTW. The Amended Decision was not appealed.

In October 2012, Cooling filed with the Division an application for attorney's fees pursuant to Section 536.087, as the prevailing party in the agency actions. An attorney representing the Division entered her appearance and filed responsive pleadings. In its Answer to Cooling's Application for Attorney's Fees, the Division admitted that Cooling was the prevailing party as defined by Section 536.085.1, but raised as an affirmative defense that the Division's position was substantially justified.

On December 4, 2012, an administrative hearing on Cooling's application for attorney's fees was held and both parties were represented by counsel. On January 31, 2013, the Director entered its Findings of Fact, Conclusions of Law, and Order (the "Director's Order"), denying Cooling's application for attorney's fees. The Director reasoned that there was no agency proceeding because the Division was not represented by counsel. The Director added that the Division was substantially justified in its actions.

Cooling subsequently sought judicial review of the Director's Order. After briefing and argument, and additional testimony, the circuit court entered a judgment on September 23, 2013 (the "September Judgment"), finding that the administrative proceeding was contested and that the Division's actions were not substantially justified. The September Judgment awarded Cooling attorney's fees in the amount of $2,500. After post-trial motions from both parties, the

5

circuit court modified the September Judgment on December 12, 2013, eliminating the dollar amount of the awarded fee, but leaving in place its finding that the Division was not substantially justified (the "December Judgment"). Both parties appealed the December Judgment. Finding the December Judgment was not final, this Court dismissed both appeals and remanded the case for entry of a final judgment. *Cooling v. State of Missouri, Department of Social Services, Family Support Division*, 446 S.W.3d 283 (Mo. App. E.D. 2014).

On remand, the circuit court took additional evidence and entered a judgment on January 5, 2015, awarding Cooling attorney's fees in the amount of $24,100 (the "January Judgment"). The January Judgment provided that the administrative proceeding was contested, the Division's actions were not substantially justified, and special factors justified the award of the attorney's fees at the rate of $200 per hour. The Division appeals, asking this Court to affirm the Director's Order.

### III. Standard of Review

We review the decision of the Director, not the circuit court's judgment. § 536.087; *Dishman v. Joseph*, 14 S.W.3d 709, 715 (Mo. App. W.D. 2000). Section 536.087 requires that:

> The reviewing or appellate court's determination on any judicial review or appeal heard under this subsection shall be based solely on the record made before the agency or court below. The court may modify, reverse or reverse and remand the determination of fees and other expenses if the court finds that the award or failure to make an award of fees and other expenses, or the calculation of the amount of the award, was arbitrary and capricious, was unreasonable, was unsupported by competent and substantial evidence, or was made contrary to law or in excess of the court's or agency's jurisdiction.

§ 536.087.7. We defer to the Director's findings of fact and will uphold its decision if this standard is met. *Dishman*, 14 S.W.3d at 715 (citations omitted). We consider the evidence in the light most favorable to the Director's decision. *Id.* (citation omitted). We review questions

6

of law, including questions as to statutory interpretation, *de novo*. *Id.* (citation omitted); *Stone v. Missouri Dep't of Health & Senior Servs.*, 350 S.W.3d 14, 20 (Mo. banc 2011).

## IV. Discussion

The Division asserts three points on appeal as grounds to reverse the circuit court's judgment and affirm the Director's Order. For ease and clarity of analysis, we review these points out of order.

<u>Point II</u>

The Division asserts the Director's Order should be affirmed because the Division was substantially justified in its enforcement efforts in the CRA and OTW actions. We disagree.

Section 536.087.1 states:

A party who prevails in an agency proceeding or civil action arising therefrom, brought by or against the [S]tate, shall be awarded those reasonable fees and expenses incurred by that party in the civil action or agency proceeding, unless the court or agency finds that the position of the [S]tate was substantially justified or that special circumstances make an award unjust.

"Missouri courts have interpreted the term 'substantially justified' to mean there must be 'reasonable basis both in law and fact' for the government's action." *Greenbriar Hills Country Club v. Dir. of Revenue*, 47 S.W.3d 346, 354 (Mo. banc 2001) (citations omitted). The burden is on the Division to establish substantial justification. *Id.* The Division's position need not have been correct, or highly justified, but simply taken in good faith and capable of being reached by a reasonable person. *Hernandez v. State Bd. of Healing Arts*, 936 S.W.2d 894, 903 (Mo. App. W.D. 1997). However, the Division's basis both in law and fact for its action must be shown clearly reasonable, not merely marginally reasonable. *Dishman*, 14 S.W.3d at 717.

Here, the record shows that the Division relied solely on Mother's unsubstantiated statements in the CSS Application and started paying Mother TANF benefits in April 2009,

7

without further verification. After Mother failed to provide her marriage license and divorce decree which could verify her averments in the CSS Application, the Division terminated Mother's TANF benefits for non-cooperation. A year later, the Division, still solely relying on Mother's unverified statements, contacted Cooling to establish paternity of L without conducting any investigation. However, paternity of L had already been established in Mother and Father's divorce decree in 2000 and this information is public in nature and easily accessible via Case.net, which the Division failed to utilize.

After Cooling informed the Division that the child support order for L was entered by the divorce court in 2000 and he now had custody of L, the Division obtained the divorce decree. The Division, still relying on Mother's statements which the Division failed to substantiate, concluded Cooling owed $45,900 in child support arrears and had not made payments to the circuit court or the Family Support Payment Center.

However, a simple reading of the divorce decree would have revealed that the Division's reliance on the payment record of the Family Support Center was unreasonable. In the divorce decree, Father was ordered to pay child support directly to Mother and, accordingly, Father's support payments to Mother would not have been recorded with the Center or the court. Instead of carefully examining the divorce decree and performing further investigation, the Division continued to rely on Mother's unverified statements made three years prior and performed a cursory "financial review." The Division then concluded Father owed $45,900 in child support arrears and issued the CRA Referral Notice. A reasonable person would not have continued to rely on Mother's unverified statements especially when Mother failed to provide supporting documentation as requested. As a matter of fact, the Division stopped relying on Mother's unverified statements when it terminated Mother's TANF benefits in September 2010. The

8

Division should not have, in good faith, continued to rely on the statements when it later charged Cooling with child support arrearages.

Even after Father showed the Division that he had fulfilled his child support obligations by furnishing the Division with the Agreement, the Division concluded Father owed the State $5,066 for the TANF benefits Mother received for three children. The Division, knowing that a hearing was pending, started withholding sums from Father's income by issuing the OTW pursuant to Section 454.465.2.

Section 454.465 creates a legal obligation in a parent to repay the State for payments of public assistance made by the State for the benefit of *a child whose parent does not fulfill his or her support obligation*. *Dycus v. Cross*, 869 S.W.2d 745, 747 (Mo. 1994) (emphasis added). However, when the Division determined that the CRA Referral was appropriate and issued the OTW, it knew that Father had already fulfilled his child support obligations based on the child support order entered more than ten years ago. The Division also knew that Mother's TANF benefits were not just for L but also for Mother's other two children, whom Cooling did not father. Nevertheless, the Division determined that Cooling owed $5,066 for the TANF benefits provided to Mother and the three children. Further, it was not until October 2011, two and one-half years after Mother started receiving TANF benefits, that the Division made any effort to contact Father. The Division could have easily accessed the divorce decree between Mother and Father or could have contacted Father when Mother filed the CSS Application. The Division failed to do either.

Under these facts, we believe the Division's position in the CRA and OTW actions was neither taken in good faith nor capable of being reached by a reasonable person. The Division persisted in those actions notwithstanding the fact that it had access to the information which,

9

together with its failure to make any effort to meaningfully investigate, caused its position and actions to be less than clearly reasonable. Therefore, the Division was not substantially justified in its actions. Point denied.

Point I

The Division asserts the Director's Order should be affirmed because Cooling did not prevail in an adversary proceeding in a contested case where the State was represented by counsel pursuant to Sections 536.085 and 536.087. We disagree.

"Section 536.087 authorizes an award of attorney's fees, subject to certain stated conditions, to a party who prevails in an agency proceeding or civil action arising therefrom." *Cooling*, 446 S.W.3d at 286 (citations omitted). The statute defines an agency proceeding as "an adversary proceeding in a contested case . . . in which the state is represented by counsel." § 536.085(1). The Division argues that Cooling cannot be awarded attorney's fees because the statute does not allow the payment of fees for administrative proceedings in which the agency was not represented by counsel.[2] The Division states that counsel never represented the agency at any level in the enforcement proceeding. We disagree.

"In construing statutes, our single goal is to ascertain the legislature's intent." *Hyde v. Dep't of Mental Health*, 200 S.W.3d 73, 75 (Mo. App. W.D. 2006). "Construction of statutes should avoid unreasonable or absurd results." *Murray v. Missouri Highway and Transp. Com'n*, 37 S.W.3d 228, 233 (Mo. banc 2001) (citation omitted). "Furthermore, the legislature is not presumed to have intended a meaningless act." *Id.* (citation omitted). When the literal sense of a

---

[2] The Division does not cite any case that directly supports this proposition. However, the Division relies on *Garland v. Ruhl*, 455 S.W.3d 442, 448 n.4 (Mo. banc 2015), to indirectly support its proposition. We find *Garland* distinguishable from this case since the agency in *Garland*, unlike here, was not a party but an adjudicator in the administrative proceeding at issue in which it rendered an administrative "decision," not a "position" against the party. *Id.* As *Garland* explains, adjudicators cannot be "represented by counsel." *Id.* The agency in *Garland* was named as a party only after the party submitted the case for judicial review. *Id.*

statute's terms would lead to an unreasonable or absurd result, the manifest intent of the legislature must prevail over a literal construction. *Taylor v. McNeal*, 523 S.W.2d 148, 152 (Mo. App. E.D. 1975) (*cited in Murray*, 37 S.W.3d at 233).

"Section 536.087 was patterned after the federal Equal Access to Justice Act [the "EAJA"], 28 U.S.C. Section 2412 (1982)." *Cooling*, 446 S.W.3d at 286 (citations omitted). "Congress passed the federal act to encourage relatively impecunious private parties to challenge abusive or unreasonable government behavior by relieving such parties of the fear of incurring large litigation expenses." *Id.* (internal quotation and citation omitted); *United States v. 1,378.65 Acres of Land*, 794 F.2d 1313, 1314–15 (8th Cir.1986). "The intent of both the EAJA and Section 536.087 is 'to require agencies to carefully scrutinize agency and court proceedings and to increase the accountability of the administrative agencies.'" *McMahan v. Missouri Dep't of Soc. Servs., Div. of Child Support Enf't*, 980 S.W.2d 120, 125 (Mo. App. E.D. 1998) (*quoting Hernandez*, 936 S.W.2d at 902–903 and *Wadley v. State Dept. of Social Services*, 895 S.W.2d 176, 178–79 (Mo. App. S.D.1995)). "The statute has a broad public policy purpose to ensure the legitimacy and fairness of government and the law so that contests between private citizens and the government are decided on the merits of the matter and not on the costs." *Wadley*, 895 S.W.2d at 179.

We find the Division's construction of Sections 536.085(1) and 536.087 leads to an unreasonable and absurd result in this case, significantly impairing the purpose of the statute. According to the Division's interpretation of the statute, an individual who successfully challenges the government's administrative action can never recover attorney's fees under Section 536.087, so long as the government was not represented by counsel in the administrative proceeding. This is so even if the person satisfies other requirements of the statute and

11

regardless of how unreasonable and unjustified the government was in taking the challenged agency action. This construction of the statute gives the government a perverse incentive to shield itself from waiving sovereign immunity under the statute by simply choosing not to be represented by counsel at the proceeding while sending an agency witness on its behalf. This is far from increasing the accountability of the administrative agencies. Furthermore, the consequence to the public is that individuals would be forced to pay out of pocket to fight back against unreasonable government actions or acquiesce in and suffer from unreasonable government actions in fear of the litigation cost. This is antithetical to the intent of the statute. Again, the intent of the statute was "to ensure the legitimacy and fairness of government and the law so that contests between private citizens and the government are decided on the merits of the matter and not on the costs," *Wadley*, 895 S.W.2d at 179, and "to increase the accountability of the administrative agencies," *McMahan*, 980 S.W.2d at 125.

Here, Cooling has met all other requirements of the statute. The CRA and OTW actions were adversary proceedings in a contested case for purposes of permitting an award of attorney's fees. When the Division sent Cooling the CRA Referral Notice, Cooling contested the state-assigned arrearage and requested a hearing. The Division was required to give Cooling a hearing pursuant to Section 454.470.[3] When Cooling furnished the Division with the Agreement, the Division still determined that Cooling owed the State $5,066 and the CRA Referral was appropriate. Cooling contested that determination. The Division further took the position that it had authority to withhold income from Cooling for the state debt and issued the OTW. At the CRA hearing, the Division also took the position that it had authority to issue the CRA Referral

---

[3] At oral argument, the Division asserted it was not required to give a hearing to Cooling for the CRA Referral Notice. We disagree. Section 454.470 clearly states that "[i]f a timely written response . . . requesting a hearing is received by the appropriate division office, . . ., a hearing *shall* be held" and that "[a]ny parent or person having custody of the child who is aggrieved as a result of any allegation or issue of fact contained in the notice . . . *shall* be afforded an opportunity for a hearing." § 454.470.4 & .7 (emphasis added).

and its computation of the state debt was correct. To support its position, the Division sent a Child Support Specialist as an agency witness who presented the Division's actions and position. Cooling contested both actions by the Division. Therefore, there is no doubt that the CRA and OTW actions were adversarial and contested for purposes of awarding attorney's fees. In addition, it is not disputed that Cooling was the prevailing party in those actions.

Considering the intent of the statute under the facts of this case, we hold that lack of counsel in the CRA and OTW actions does not bar an award of attorney's fees to Cooling. To hold otherwise would thwart the intent of the statute and encourage the State to avoid waiving sovereign immunity by choosing not to send counsel where it maintains a position against a private party. The State had an interest in the proceedings. For reasons unknown to us, however, the Division chose not to send counsel to represent those interests, even after the Hearing Officer sought a written response from the Division. Even though counsel did not appear at the proceedings, its position was presented and asserted by its agency witness and Cooling effectively had to rebut that position in order to prevail. By taking the position initially and persisting in the CRA and OTW actions, the Division all but ensured that Cooling would have to contest the agency actions to obtain relief.

Although we understand the legislature's desire to control costs,[4] we do not believe that allowing Cooling to be awarded attorney's fees under the circumstances of his case would open the floodgates to other cases of fee awards. The State's financial interests are additionally

---

[4] Similar to Section 536.085(1), the EAJA limits recovery of litigation expenses of private parties to those who prevailed against the federal government in an agency proceeding which was an "adversary adjudication." 5 U.S.C. § 504(a)(1). An "adversary adjudication" is defined as "an adjudication . . . in which the position of the United States is represented by counsel or otherwise, but excludes an adjudication for the purpose of establishing or fixing a rate or for the purpose of granting or renewing a license." 5 U.S.C. § 504(b)(1)(C). The adversary adjudication requirement was designed to "narrow the scope of [the statute] in order to make its costs acceptable," H.R. Rep. No. 96-1418, at 14, *reprinted in* 1980 U.S.C.C.A.N. 4984, 4993, and to "preclude[] an award in a situation where an agency . . . does not take a position in the adjudication," H.R. Conf. Rep. 96-1434, at 23 (1980), *reprinted in* 1980 U.S.C.C.A.N. 5003, 5012.

protected by the statutory scheme which provides that, even if the State loses in an "agency proceeding," it does not have to pay attorney's fees of the prevailing party if it can show that its action was "substantially justified," or if "special circumstances make an award unjust." § 536.087.1.

Given the intent of the legislature in enacting Sections 536.085 and 536.087 and that of Congress in passing the EAJA, we believe that the literal construction of Section 536.085(1) should not prevail over the intent of the statute in this case. Cooling should not be disadvantaged by the Division's conscious decision not to be represented by counsel while its position was otherwise presented. The Director's Order denying Cooling's application for attorney's fees on the basis that the Division was not represented by counsel in those actions was unreasonable in this case. Point denied.

## Point III

The Division asserts the circuit court erred in awarding Cooling attorney's fees in an amount exceeding the statutory rate of $75 per hour under Section 536.085. The Division argues that Cooling failed to present competent and substantial evidence of special factors justifying the award. We agree.

Section 536.085(4) provides:

"Reasonable fees and expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test or project which is found by the court or agency to be necessary for the preparation of the party's case, and reasonable attorney or agent fees. The amount of fees awarded as reasonable fees and expenses shall be based upon prevailing market rates for the kind and quality of the services furnished, except that no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the state in the type of civil action or agency proceeding, and attorney fees shall not be awarded in excess of *seventy-five dollars per hour* unless the court determines that a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

14

(emphasis added). The party requesting an award of attorney fees must present competent and substantial evidence to support the claim. *Washington v. Jones*, 154 S.W.3d 346, 352 (Mo. App. E.D. 2004). Whether an award of fees and expenses is supported by competent and substantial evidence is judged by examining the record as a whole. *Oakes v. Mo. Dept. of Mental Health*, 254 S.W.3d 153, 157 (Mo. App. E.D. 2008) (citation omitted). Although we defer to the circuit court's factual findings, we review *de novo* the circuit court's legal conclusion that its factual findings are competent to constitute a special factor under Section 536.085(4). *Baker v. Dep't of Mental Health*, 408 S.W.3d 228, 238 (Mo. App. W.D. 2013).

Here, in concluding that special factors justified a fee higher than the $75 per hour statutory cap, the circuit court made the following findings: (1) Cooling's attorneys each have years of experience in the areas of domestic relations, administrative law and child support law; (2) the prevailing hourly rate for an attorney's services in the City of St. Louis exceeds $75 per hour and Cooling's attorneys' hourly rate of $200 is within the range charged by other local attorneys; (3) the result obtained by Cooling's attorneys was a total eradication of the alleged child support arrears; and (4) the Division has vigorously pursued Cooling and opposed payment of attorney's fees, requiring prolonged and repeated appearances in the circuit court and the appellate court.

When considering a particular expertise of an attorney for purposes of Section 536.085(4), the expertise necessary to handle the case means that the case requires an attorney with "some distinctive knowledge or specialized skill needful for the litigation in question," not "general lawyerly knowledge and ability useful in all litigation." *Pierce v. Underwood*, 487 U.S.

552, 571–72 (1988).[5] We find *Hutchings v. Roling*, 193 S.W.3d 334 (Mo. App. E.D. 2006), instructive here. In *Hutchings*, the court concluded attorney's fees in excess of the statutory cap were appropriate because the issues in the litigation involved complex state and federal Medicaid regulations. 193 S.W.3d at 350. Here, unlike *Hutchings*, Cooling presented no evidence suggesting his case involved a peculiarly complex issue requiring special legal expertise. Cooling also presented no evidence that his case was "distinctly complex when compared to other administrative agency matters." *See Baker*, 408 S.W.3d at 239–40. The total eradication of Cooling's alleged support arrearage was largely based on Mother and Father's Agreement. Cooling's adjudication regarding the state debt did not involve complex skills or law. Accordingly, the expertise necessary to successfully argue Cooling's case was not more than general lawyerly knowledge and ability useful in all litigation. In addition, the fact that the prevailing hourly rate for an attorney's services in the City of St. Louis exceeds $75 per hour is not a special factor pursuant to Section 536.085(4). *Baker*, 408 S.W.3d at 236.

Also, the fact that the result obtained by Cooling's attorneys was a total eradication of the alleged child support arrears does not constitute a special factor pursuant to Section 536.085(4). In *Pierce*, 487 U.S. at 573, the Supreme Court held that the district court erred in relying on the fact of "the results obtained" as a special factor for rates exceeding the statutory cap under the EAJA. The Court reasoned that the factor of "the results obtained" is "applicable to a broad spectrum of litigation" and is "little more than routine reasons why market rates are what they are." *Id.* Likewise, "the result obtained" here is too "generally applicable" as a factor to constitute a "special" reason for exceeding the statutory cap.

---

[5] Like Section 535.085(4), the EAJA has a "special factor" notation referring to the "limited availability of qualified attorneys for the proceedings involved." 28 U.S.C. § 2412(2)(A).

16

The circuit court also relied on the fact that the Division vigorously pursued Cooling and opposed payment of attorney's fees, resulting in prolonged litigation and repeated appearances in courts. However, that is relevant to the number of hours expended and whether they are reasonable under the statute, not the rate of attorney's fees. *See Estate of Cervin v. C.I.R.*, 200 F.3d 351, 357 (5th Cir. 2000) (holding that the government's litigation position, which allegedly prolonged the litigation, cannot be a "special factor" warranting an increase above the statutorily allowed $75 per hour under the EAJA). Cooling fails to demonstrate why the Division's litigation positions increased the hourly rate, as opposed to the number of hours required to litigate the case.

In summary, the circuit court's findings are not legally sufficient to constitute a special factor under Section 536.085(4). On the record before us Cooling did not meet his burden to establish a special factor pursuant to Section 536.085(4). The circuit court erred in awarding attorney's fees at the hourly rate of $200 rather than the statutorily prescribed rate of $75 per hour. Point III is granted, and this matter is remanded for recalculation of the award to Cooling of attorney's fees.

### V. Conclusion

The Director's Order denying Cooling's application for attorney's fees is reversed. The judgment of the circuit court is reversed as to the amount awarded. The case is remanded for the circuit court to make a determination as to the correct amount pursuant to Section 536.085 and this opinion.

_____
Angela T. Quigless, Judge

Philip M. Hess, P.J., and
Gary M. Gaertner, Jr., J., Concurs.

17