STATE EX REL. Attorney General
Josh HAWLEY, Appellant,

v.

CITY OF ST. LOUIS, Respondent.

No. ED 104564

Missouri Court of Appeals,
Eastern District,
DIVISION FOUR.

Filed: August 8, 2017

Motion for Rehearing and/or Transfer
to Supreme Court Denied
September 25, 2017

Application for Transfer Denied
November 21, 2017

Sarah J. Dobecki, Doug Noland, for appellant.

Michael A. Garvin, Matthew M. Moak, for respondents.

## OPINION

James M. Dowd, Chief Judge

### I. Introduction

This appeal between the State of Missouri and the City of St. Louis presents us with two questions: (1) whether under § 105.726.4[1] the City owes the State $439,975 to compensate the Attorney General's Office ("AGO") for the legal representation it provided to the St. Louis Board of Police Commissioners ("Board") and associated individuals[2] in certain civil liability claims brought against the Board, and (2) whether the State is required by law to reimburse the City in the amount of $1,608,269.90 for settlements and judgments paid by the City and the Board between November 7, 2012 and September 1, 2013 for liability claims filed against the Board.

The trial court in a bench trial entered a declaratory judgment in favor of the City on *both* issues. On the first question, the court declared that the City has no duty to compensate the State for the legal work in question. And as to the second question, the court declared that the City is entitled to be reimbursed by the State in the amount of $1,608,269.90 for settlements and judgments that were paid by the City on behalf of the Board or by the Board itself from November 7, 2012 to September 1, 2013.

The first question occupies the State's first three points on appeal. As to this

---

1. All statutory references are to RSMo Cum. Supp. 2013 unless otherwise indicated.

2. For purposes of this opinion, we use the term "Board" to refer generally to all individuals and entities including the Board itself, its members, police officers, and any other individuals for whom the representation at issue in this case was provided or for whom the judgments and settlements at issue were paid.

question, we agree with the State and reverse the judgment of the trial court because pursuant to § 105.726.4, the City is required to fairly compensate the AGO for the legal fees and expenses incurred by the AGO for its representation of the Board in claims for which such representation was requested and statutorily mandated. As to the second question, we affirm the trial court's judgment finding no error in the trial court's declaration that, pursuant to § 105.726.3, the State is required to reimburse the City for the various settlements and judgments the City or the Board paid between November 7, 2012 and September 1, 2013.

## II. A review of the key legislative enactments relating to the control over the St. Louis Metropolitan Police Department ("SLMPD"), and the responsibility to provide and pay for the legal representation of the Board and to pay any settlements or judgments incurred by the Board.

### 1. From 1861 until September 1, 2013, the SLMPD was under state control.

The Board was established as a state agency by the Missouri General Assembly in 1861. *State ex rel. Sayad v. Zych,* 642 S.W.2d 907, 908-09 (Mo. banc 1982) (citing Act of March 27, 1861, 1861 Mo. Laws 446). Each of the five members of the Board, except for the Mayor of St. Louis, was appointed by the Governor. *Id.* at 909. The Board was empowered to establish, control, and administer the City police force, and was authorized to compel the City to fund the force. *Id.* Contemporaneous legislation prohibited the City from interfering with the Board or the exercise of its powers. *Id.* And although the Board's enabling legislation underwent changes over the following century-and-a-half, throughout that period the Board retained its authority, most recently derived from §§ 84.010 to 84.340, RSMo 2000, to direct and control the affairs of the City's police force.

### 2. With the passage in 2012 of Initiative Proposition A, Missouri voters sanctioned the shift from state control to local control of the SLMPD.

On November 6, 2012, Missouri voters passed Initiative Proposition A, which led directly to the enactment of § 84.344. That statute gave the City the right to establish its own police force free from state control after July 1, 2013. The statute also directed that once the City established its police force, the state-controlled Board was required to transfer to the City title and ownership of all its indebtedness and assets.

### 3. City Ordinance 69489 established the SLMPD as the City's own police force.

On July 2, 2013, pursuant to the authorization granted it by § 84.344, the City passed Ordinance 69489, which provided for the establishment on September 1, 2013 of the City's own police force. And on September 1, 2013, the City assumed control over the force, which included its acceptance of the responsibility, ownership, and liability as the successor-in-interest of the Board's contractual obligations, indebtedness, and other lawful obligations.

### 4. Proposition A also amended § 105.726, a statute originally adopted in 1983 as part of the establishment of the State Legal Expense Fund ("SLEF") for the payment of claims and judgments against state agencies, officers, and employees.

In 1983, nearly thirty years prior to the passage of Proposition A, the Missouri General Assembly created the SLEF. § 105.711-726, RSMo 1986. Section 105.711 set the terms of SLEF coverage, establishing a fund to pay claims and judgments rendered against state agencies, officers, and employees for conduct arising out of

and performed in connection with official state duties. Individuals and entities that were covered by the SLEF included elected officials, appointees, members of state boards or commissions, members of the Missouri National Guard, physicians associated with the State, and others. Section 105.716 required that these defendants be represented by the AGO.

Section 105.726 in its original version provided that no part of the SLEF-enacting legislation could be construed to broaden the liability of the State beyond the exceptions to its sovereign immunity that were already carved out in §§ 537.600 to 537.610, or to abolish or waive any defense.

5. The Missouri Supreme Court's holding in *Smith v. State*, 152 S.W.3d 275 (Mo. banc 2005) led to the 2005 amendment of § 105.726, which expanded SLEF coverage to the Board as a state agency and to City police officers as officers of the state.

From 1983 when the SLEF was created until 2005, the City had continued to provide and pay for legal representation for the Board and to pay any settlements or judgments it incurred. In 1999, members of the Board and several police officers filed a declaratory judgment action asserting that the Board was a state agency, that they were state officers, and that therefore they were entitled to coverage under the SLEF. *See Smith v. State*, 152 S.W.3d 275 (Mo. banc 2005). In 2005, the Missouri Supreme Court held in *Smith* that the members of the Board and police officers were entitled to SELF coverage because the Board was an "agency of" and the plaintiffs were "officers of" the state, and because the claims for reimbursement through the SLEF were not barred by principles of sovereign immunity. 152 S.W.3d at 275-79, 280.

As a result, in 2005, the General Assembly amended § 105.726 to provide that the Board was thereafter entitled to reimbursement through the SLEF, but only up to $1 million per fiscal year. § 105.726.3, RSMo Cum. Supp. 2006. The amendment also provided that the AGO was required to represent the Board upon request in any liability claim filed against the Board for which SLEF coverage was available, and that the AGO was entitled to fair compensation for the cost of the representation. § 105.726.4, RSMo Cum. Supp. 2006.

6. Proposition A amended $ 105.726.3 to carve out the Board from SLEF coverage.

The November 6, 2012 passage of Proposition A resulted in the amendment of § 105.726.3 pursuant to which the Board was no longer entitled to reimbursement through the SLEF for covered claims. The amended statute provided as relevant here that only the Board's successor-in-interest—the City—was entitled to reimbursement through the SLEF. The statute has not been amended since the passage of Proposition A.

7. Proposition A also enacted § 84.345.

Section 84.345—like the amendment to § 105.726.3—provides that for all claims "arising out of actions occurring before the date of completion of the transfer" to local control, the State shall continue to provide legal representation as set forth in § 105.726, and must continue to provide reimbursement through the SLEF for such claims under § 105.726. § 84.345.2.

### III. Factual Background

Prior to the *Smith* decision, the City had been providing legal representation to the Board in liability claims brought against the Board. However, as a result of *Smith* and the General Assembly's subsequent amendment of § 105.726, the State through the AGO began representing the Board in such cases.

On February 11, 2013, the AGO notified the Board that on April 1, 2013, it intended to begin charging the Board attorney's fees at a rate of $125 per hour. On May 29, 2013, representatives of the AGO and the City met to discuss the AGO's request for payment of attorney's fees. At that meeting, the City did not agree to pay any attorney's fees and did not make any counter-offer to the AGO's requested compensation rate of $125 per hour. In fact, the parties did not discuss any specific rate that the City would consider paying. Nevertheless, the City proposed that any payment of fees would operate as an offset to the SLEF reimbursements the City claimed the State owed it.

By letter dated June 24, 2013, the AGO rejected the City's offset proposal and advised the City that it would begin charging $125 per hour on July 1, 2013. The City did not respond to the letter, though the AGO did not yet submit any billings to the City. Then, on September 24, 2013, the AGO advised that its plan to begin billing the City would begin on October 1, 2013. Finally, on February 18, 2014, the AGO sent the City its first invoice.

Since February 2014, the AGO has sent the City further invoices, which cover services rendered up to December 2015. The invoices total $439,975 and are based on the rate of $125 per hour. The parties stipulated at trial that the 3,519.8 hours spent by the AGO in defending the Board were reasonable and necessary and that the rate of $125 per hour was less than the rate typically charged by local private attorneys. At oral argument, the City conceded that there was no dispute that the fees sought by the AGO were reasonable and necessary.

We note that the AGO has sent invoices only for services rendered after the date the transfer to local control was completed and that the AGO has continued to represent the Board in claims arising out of events that occurred prior to the transfer to local control. The record does not show that the AGO has tendered any representation in claims arising out of events occurring subsequent to the transfer.

## IV. Standard of Review

This court-tried civil action involved claims seeking *quantum meruit* damages, declaratory relief, and relief ancillary to the declaratory judgment. The standard of review of a declaratory judgment action is the same as in any other court-tried case. *City of Kansas City v. Chastain*, 420 S.W.3d 550, 554 (Mo. banc 2014); § 527.070. We affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* Questions of law are reviewed *de novo. Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012).

## V. Points 1, 2, and 3: (1) Whether the City's duty to "fairly compensate" the AGO for the representation at issue that the AGO provided to the Board was triggered in this case, and (2) if so, whether the scope of the compensation includes attorney's fees as well as case-related expenses.

1. An introduction to our resolution of these issues.

We find that the City's duty to compensate the AGO was triggered under the facts of this case. The trial court's construction of the term "negotiate" as used in § 105.726.4 was erroneous both as to the meaning of the word and in its application when the court held that the parties had not "negotiated" and therefore the City's duty to reimburse the AGO had not been triggered. We also find that the "cost" of the representation to which the AGO is entitled under § 105.726.4 includes

attorney's fees and the related costs and expenses incurred in connection with the representation at issue in this case.

The trial court found that neither the State nor the City "made any attempt to negotiate expenses and charges," so the City's statutory duty to pay such fees and expenses was not triggered. Since it is undisputed that at least an attempt to reach an agreement—albeit an unsuccessful one—was made in this case, the trial court appears to have interpreted "negotiate" to mean that to trigger the City's statutory duty to pay, a *successful* negotiation between the State and the City must occur. We do not share the trial court's statutory interpretation of the word "negotiate" as used in § 105.726.4, which is a legal question we review *de novo*.

### 2. Section 105.726.4.

Section 105.726.4 is the statutory basis of the City's obligation to pay. It provides:

Subject to the provisions of subsection 2 of section 84.345, if the representation of the AGO is requested by a board of police commissioners or its successor-in-interest established pursuant to section 84.344, the AGO shall represent, investigate, defend, negotiate, or compromise all claims under sections 105.711 to 105.726 for the board of police commissioners, its successor-in-interest pursuant to section 84.344, any police officer, other employees, agents, representatives, or any other individual or entity acting or purporting to act on their behalf. The AGO may establish procedures by rules promulgated under chapter 536 under which claims must be referred for the AGO's representation. *The AGO and the officials of the city which the police board represents or represented shall meet and negotiate reasonable expenses or charges that will fairly compensate the AGO and the office of administration for the cost of the representation of*

*the claims under this section.* (Emphasis supplied.)

### 3. The rules of statutory construction.

The primary rule of statutory interpretation is to give effect to the legislature's intent as reflected in the plain language of the statute. *Gash v. Lafayette Cty.*, 245 S.W.3d 229, 232 (Mo. banc 2008) (citing *State ex rel. Burns v. Whittington*, 219 S.W.3d 224, 225 (Mo. banc 2007)). To discern the intent of the General Assembly, we look to statutory definitions or, if no such definitions are provided, the text's "plain and ordinary meaning," which may be derived from a dictionary. *Id.* The construction of statutes is not to be hypertechnical, but rather, reasonable and logical, and is to give meaning to the statutes. *Id.* (citing *Donaldson v. Crawford*, 230 S.W.3d 340, 342 (Mo. banc 2007)). We are mindful that a particular statutory phrase cannot be read in isolation. *Id.* (citing *Burns*, 219 S.W.3d at 225). Instead, the provisions of a legislative act are construed together and read in harmony with the entire act. *Id.* (citing *Mo. Dep't of Soc. Servs., Div. of Aging v. Brookside Nursing Ctr., Inc.*, 50 S.W.3d 273, 276 (Mo. banc 2001)).

Moreover, in discerning the legislative intent, we look also to the problem the legislature sought to address with the statute's enactment. *Lincoln Cty. Stone Co., Inc. v. Koenig*, 21 S.W.3d 142, 146 (Mo. App. E.D. 2000). We must construe the statute in light of the purposes the legislature intended to accomplish and the evils it intended to cure. *Id.* A statute must not be interpreted in such a way as to defeat its purpose. *Id.* And most important here, construction of statutes should avoid unreasonable or absurd results. *Cooling v. Dep't of Soc. Servs.*, 491 S.W.3d 253, 261 (Mo. App. E.D. 2016) (citing *Murray v. Mo. Highway and Transp. Comm'n* 37 S.W.3d 228, 233 (Mo. banc 2001)). When

the literal sense of a statute's terms would lead to an unreasonable or absurd result, the manifest intent of the legislature must prevail over a literal construction. *Id.* (citing *Taylor v. McNeal*, 523 S.W.2d 148, 151-52 (Mo. App. 1975)).

4. Application of the rules of statutory construction to § 105.726.4.

■ No statutory definitions are provided for the terms "meet," "negotiate," "reasonable expenses," "reasonable charges," "fairly compensate," or "cost of the representation" as used in § 105.726.4. Therefore, we must interpret those terms according to their plain and ordinary meanings, with reference to the problem the statute was intended to solve, to the broader statutory context within which the statute applies, and to whether the consequences of any particular interpretation of the statute would be unjust, unreasonable, or absurd. *Cooling*, 491 S.W.3d at 261; *Lincoln City Stone Co., Inc.*, 21 S.W.3d at 146.

We find that the clear intent of § 105.726.4 was to require the City to fairly compensate the AGO for the representation on the covered claims, and to provide a mechanism to determine the amount of such compensation. The parties need only to have met and negotiated.

We find that they did so. First, as to the meeting requirement, we find that the parties' in-person meeting of May 29, 2013 satisfies this requirement. Next, while they failed to reach an agreement, we also find that they in fact negotiated, under the plain and ordinary understanding of the meaning of that term. It is manifest that negotiations are sometimes successful and sometimes not. In fact, the record here demonstrates that the AGO made multiple offers to try to come to an agreement with the City on what would be fair compensation. The City, for its part, largely ignored the AGO though the City agreed to the May 29, 2013 meeting to discuss the issue.

While the City made no counter-offer regarding the amount of the hourly fee, our record shows that the City insisted that any amount it might end up paying for the attorney's fees would constitute an offset to the SLEF reimbursements the City claimed the State owed it. Based on this record, we find that the parties' conduct satisfies § 105.726.4's requirement to "meet and negotiate."

We buttress our interpretation of the meaning of "negotiate" with one of our rules of statutory construction—that the interpretation of statutes should avoid unreasonable or absurd results. *Cooling*, 491 S.W.3d at 261 (citing *Murray*, 37 S.W.3d at 233). We find that the trial court's interpretation of the "negotiate" requirement in § 105.726.4 frustrates the purpose of the statute and would lead to and, in fact, has led to an unreasonable and absurd result.

■ The purpose of § 105.726.4 is twofold: The AGO is required upon request to represent the Board or its successor on covered claims, and the Board or its successor is required to, in exchange, fairly compensate the AGO for such representation. To interpret "negotiate" as the trial court did here, as some sort of triggering event whereby the City can simply refuse to negotiate in order to avoid having to fairly compensate the AGO, is an unreasonable and absurd result and frustrates the purpose of the statute.

It follows that where the parties have failed to reach an agreement for the payment of fair compensation, either may, by bringing an action for declaratory judgment, turn to the courts for a determination of fair compensation.

5. Compensation includes attorney's fees and case-related costs and expenses.

■ We now turn the matter of whether the City has a duty under § 105.726.4 to compensate the State for the AGO's attor-

ney's fees. The City argues that such fees are not part of the "cost of the representation" under § 105.726.4 and are therefore not recoverable. We reject this unreasonably restrictive interpretation of the statute and instead, under our *de novo* standard of review, find that the mandate in § 105.726.4 that the City pay the "reasonable expenses or charges that will fairly compensate the attorney general ... for the cost of the representation of the claims under this section" unquestionably includes the payment of attorney's fees in addition to case-related costs and expenses.

The statute seeks to ensure that the AGO is fairly compensated for legal work that the same statute has required the AGO to accept. Black's Law Dictionary provides that to "compensate" means "[t]o pay (another) for services rendered." *Compensate*, BLACK'S LAW DICTIONARY (9th ed. 2009). If this statute is read to exclude attorney's fees from the mandate to "fairly compensate" the AGO, the AGO will not have been compensated for its legal work.

We acknowledge that in Missouri the costs of litigation are frequently distinguished from attorney's fees. *See, e.g.,* § 452.355.1. This is not one of those instances.

Consequently, we find that the City has a duty to pay attorney's fees in order to fairly compensate the AGO. We also find that the State's proposed rate of $125 per hour for attorney's fees owed is fair. The parties stipulated that the rate of $125 per hour is less than the rate charged by local private attorneys. The parties further stipulated that the number of hours spent by the AGO on the relevant claims was reasonable and necessary, and that the invoices submitted for that accumulation of hours totaled $439,975.

6. Declaratory relief and supplemental relief in the form of money damages are proper remedies in this case.

█ The City's remaining argument is that the relief the State seeks is not the proper subject of a declaratory judgment action. We reject the City's assertion in this regard.

█ A declaratory judgment action provides an appropriate method of determining controversies concerning the construction of statutes and powers and duties of governmental agencies thereunder. *State Tax Comm'n v. Admin. Hearing Comm'n*, 641 S.W.2d 69, 75 (Mo. banc 1982). A petition for declaratory relief may properly seek additional relief, including a claim for damages, *City of Creve Coeur v. Creve Coeur Fire Protection Dist.*, 355 S.W.2d 857, 859 (Mo. banc 1962), and supplemental relief based on a declaratory judgment or decree may be granted whenever necessary or proper. § 527.080; *see also Hudson v. Jones*, 278 S.W.2d 799, 804 (Mo. App. 1955) (observing that the purpose of a declaratory judgment is to *settle* rights and thus afford relief from uncertainty and insecurity—i.e., to provide complete relief); *Satterfield v. Layton*, 669 S.W.2d 287, 289 (Mo.App.E.D. 1984) (the court may give a money judgment in a declaratory judgment action when such is warranted).

We reject the City's arguments that declaratory relief is improper here. The State has properly sought both a declaration of its rights under the aforementioned statutes and supplemental relief based on its rights as declared by the court.

## VI. Point 4: Whether the State must reimburse the City for its and the Board's payments between November 7, 2012 and September 1, 2013 of settlements and judgments in liability claims.

█ In its final point, the State asserts that the trial court erred by ordering the State, pursuant to § 105.726.3, to reim-

burse the City for its and the Board's payments made between November 7, 2012 and September 1, 2013 of settlements and judgments in liability claims filed against the Board. We disagree.

We find that § 84.345.2 is on point. That subsection provides that the SLEF shall continue to provide reimbursement for all claims arising out of actions occurring before the date the transfer of ownership and control of the Board to the City was completed, which was September 1, 2013. Section 84.345.2 extends the pre-September 1, 2013 reimbursement coverage specifically "to all claims, lawsuits, and other actions brought against any commissioner, police officer, employee, agent, representative, or any individual or entity acting or purporting to act on its or their behalf."

Since the reimbursement at issue here concerns payments between November 7, 2012 and September 1, 2013, all before the transfer was completed, we find that the State has a duty pursuant to § 84.345.2 to provide reimbursement for such claims.

The State relies on § 105.726.3, which provides as follows:

> Moneys in the state legal expense fund shall not be available for the payment of any claim or any amount required by any final judgment rendered by a court of competent jurisdiction against a board of police commissioners established under chapter 84, including the commissioners, any police officer, notwithstanding sections 84.330 and 84.710, or other provisions of law, other employees, agents, representative, or any other individual or entity acting or purporting to act on its or their behalf. Such was the intent of the general assembly in the original enactment of sections 105.711 to 105.726, and it is made express by this section in light of the decision in Wayman Smith, III, et al. v. State of Missouri, 152 S.W.3d 275. *Except that the commissioner of adminis-*

*tration shall reimburse from the legal expense fund the board of police commissioners established under section 84.350, and any successor-in-interest established pursuant to section 84.344, for liability claims otherwise eligible for payment under section 105.711 paid by such board up to a maximum of one million dollars per fiscal year.* (Emphasis supplied.)

There is no dispute that the liability claims at issue here would be "otherwise eligible for payment under section 105.711." The State argues, instead, that the amendment to § 105.726.3 that occurred as a result of the passage of Proposition A removed the specific reference to the Board as being entitled to reimbursement, so the Board is therefore not entitled to the SLEF reimbursements the City claims here. We disagree.

■ The legislature is presumed not to have intended a meaningless act, *Cooling*, 491 S.W.3d at 261 (citing *Murray*, 37 S.W.3d at 233), and if we were to accept the State's argument as to this point, § 84.345.2 would be rendered meaningless.

Section 84.345.2 directs that the SLEF continue to provide reimbursement for "all claims, lawsuits, and other actions brought against any commissioner, police officer, employee, agent, representative, or any individual or entity acting or purporting to act on its or their behalf" arising out of events occurring before the date of completion of the transfer to local control.

The State argues that because § 84.345.2 references § 105.726 in its mandate that the SLEF "shall continue to provide reimbursement for such claims under section 105.726," and because that section provides for reimbursement only to the successor-in-interest to the Board, the City is not entitled to reimbursement for its or the Board's post-amendment, pre-transfer payments of settlements or judg-

ments for liability claims. But reaching the State's desired conclusion would effectively write out of Missouri law § 84.345.2's directive of continued reimbursement for payments in claims arising out of events occurring before the date of the completion of the transfer. This we cannot do.

We do not read § 105.726.3 in as restrictive a manner as the State. Rather, we find that the City as the successor-in-interest to the Board is entitled to be reimbursed for its and the Board's payments made between November 7, 2012 and September 1, 2013. Section 105.726.3 does not provide that the City may not at a date subsequent to the completion of the transfer to local control be reimbursed for its and the Board's payments made between November 7, 2012 and September 1, 2013. The statute provides simply that the City as the successor-in-interest to the Board *shall* be reimbursed for its payments for liability claims eligible for reimbursement under § 105.711, up to a maximum of $1 million per fiscal year.

And indeed, if the General Assembly had intended to cut off reimbursement to the City for claims arising out of events occurring before the completion of the transfer, we fail to see why it would have adopted § 84.345.2; and, especially, have done so at the same time it amended § 105.726.3. Therefore, we reject the State's arguments here because they rest on the erasure of § 84.345.2. We find no error in the trial court's judgment that the State reimburse the City.

Point 4 is denied.

## VII. Conclusion

For the reasons stated above, as to Points 1, 2, and 3, we reverse the judgment of the trial court and enter judgment in favor of the State in the amount of $439,975 as requested in their petition. As to point 4, we affirm the judgment in favor

of the City on its counterclaim, in the amount of $1,608,269.90.

Kurt S. Odenwald, J., and Lisa P. Page., J., concur.