

# In the Missouri Court of Appeals
## Eastern District
### DIVISION TWO

| | | |
|---|---|---|
| CITY OF ST. LOUIS, | ) | No. ED112792 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | 2222-CC08736 |
| | ) | |
| STATE OF MISSOURI, AND ANDREW BAILEY, MISSOURI ATTORNEY GENERAL, | ) | Honorable Jason M. Sengheiser |
| | ) | |
| | ) | |
| | ) | |
| Appellants. | ) | Filed: March 25, 2025 |

Before Lisa P. Page, P.J., Rebeca Navarro-McKelvey, J., and Virginia W. Lay, J.

The State of Missouri and Attorney General Andrew Bailey[1] (collectively State) appeal from the trial court's grant of summary judgment in favor of the City of St. Louis (City) on its petition for declaratory judgment seeking reimbursement from the state legal expense fund (SLEF). We reverse.

## BACKGROUND

A.S. (Decedent) was shot and fatally wounded by a police officer in a publicized and controversial 2011 incident. In 2012, Decedent's surviving daughter (Daughter) filed an action

---

[1] Andrew Bailey has been substituted for former attorney general Eric Schmitt pursuant to Rule 52.13(d).

for wrongful death and civil rights violations against the St. Louis Board of Police Commissioners (Board)[2] and the officer. The case was settled in June 2013.

However, in December 2017, Daughter filed a motion to re-open discovery and for sanctions, alleging the Attorney General's office and the Board failed to disclose two DNA reports while the wrongful death suit was pending. One DNA test, completed on February 12, 2012, showed the police officer's DNA on the trigger, grip, and rough areas of the revolver found in Decedent's car. The second report on July 31, 2012, concluded the police officer's DNA was also on the revolver's head screw. Despite numerous discovery requests, these DNA tests were never produced to Daughter prior to settlement of her wrongful death suit. In fact, but for the subsequent criminal charges against the police officer when the circuit attorney publicly stated the police officer's DNA was discovered on the revolver at issue, Daughter would not have discovered the City's malfeasance as she believed the matter was concluded by the settlement agreement in the underlying case. On April 12, 2019, Daughter entered another settlement agreement with the Board, Attorney General, and the City for conduct alleged in the motion for sanctions. As the Board's successor-in-interest, the City paid Daughter $250,000 pursuant to the agreement.

The City filed a petition for declaratory judgment seeking SLEF reimbursement and a motion for summary judgment, arguing that pursuant to Sections 84.345.2 and 105.726.3 RSMo (2016),[3] it was entitled to judgment as a matter of law. The State also filed a motion for summary judgment, arguing it was entitled to judgment because the SLEF statutes do not provide coverage for claims tendered to the Attorney General after August 28, 2005, thus the

---

[2] Pursuant to Section 84.344 RSMo (2016), the City is the successor-in-interest to the Board. For ease of reading, we refer to the entities interchangeably.
[3] All further statutory references are to RSMo (2016), unless otherwise indicated.

underlying claim was not subject to reimbursement as a matter of law. The trial court granted summary judgment in favor of the City. This appeal follows.

## BACKGROUND

The legislature created SLEF in 1983 to pay claims or judgments against the State, its agencies and employees, as well as other individuals and entities. *State ex rel. Schmitt v. City of St. Louis*, 639 S.W.3d 540, 542 (Mo. App. E.D. 2022) (quoting *Holmes v. Steelman*, 624 S.W.3d 144, 149 (Mo. banc 2021)); *see also* Section 105.711.1 RSMo (2000). In 2005, the Supreme Court interpreted Section 105.711.2(2) to provide representation, reimbursement, and satisfaction of judgments or settlements of actions against members of the Board and officers of the St. Louis police department because they were officers of the State as contemplated by SLEF. *Smith v. State*, 152 S.W.3d 275, 278 (Mo. banc 2005) (superseded by statute).

In response to the holding in *Smith*, the legislature amended Section 105.726, adding subsection 3:

> Moneys in the state legal expense fund shall not be available for the payment of any claim or any amount required by any final judgment rendered by a court of competent jurisdiction against a board of police commissioners established under chapter 84, RSMo, including the commissioners, any police officer, notwithstanding sections 84.330 and 84.710, RSMo, or other provisions of law, other employees, agents, representative, or any other individual or entity acting or purporting to act on its or their behalf. Such was the intent of the general assembly in the original enactment of sections 105.711 to 105.726, and it is made express by this section in light of the decision in *Wayman Smith, III, et al. v. State of Missouri*, 152 S.W.3d 275. **Except** that the commissioner of administration shall reimburse from the legal expense fund any board of police commissioners established under chapter 84, RSMo, for liability claims otherwise eligible for payment under section 105.711 paid by such boards on an equal share basis per claim up to a maximum of one million dollars per fiscal year. (emphasis added).

The legislature further amended Section 105.726, to add subsection .5 which stated:

> Claims tendered to the attorney general promptly after the claim was asserted as required by section 105.716 and prior to August 28, 2005, may be investigated, defended, negotiated, or compromised by the attorney general and full payments

3

may be made from the state legal expense fund on behalf of the entities and individuals described in this section as a result of the holding in *Wayman Smith, III, et al. v. State of Missouri*, 152 S.W.3d 275.

The 2005 amendments evidenced a clear legislative intent, in response to the Missouri Supreme Court's decision in *Smith*, to eliminate SLEF liability for direct payment claims filed by the Board or its officers after August 28, 2005. At the same time, the legislature also carved out a specific exception that Chapter 84 boards shall be reimbursed up to $1 million per fiscal year for claims subsequently tendered to the Attorney General. Section 105.726 RSMo (Cum. Supp. 2005).

In November 2012, Missouri voters passed Proposition A, resulting in the enactment of Sections 84.344, .345, .350, and further amended Section 105.726.3. Specifically, Section 84.345.2 states:

> For ***any claim, lawsuit, or other action arising out of actions occurring before the date of completion of the transfer*** provided under subsection 2 of section 84.344, the state shall continue to provide legal representation as set forth in section 105.726, and the state legal expense fund shall continue to provide reimbursement for such claims under section 105.726. This subsection applies to all claims, lawsuits, and other actions brought against any commissioner, police officer, employee, agent, representative, or any individual or entity acting or purporting to act on its or their behalf. (emphasis added).

Thus, upon transfer of the City's police force to local control, all SLEF liability for St. Louis City police commissioners and officers terminated on September 1, 2013. *State ex rel. Hawley v. City of St. Louis*, 531 S.W.3d 602, 604 (Mo. App. E.D. 2017).

## DISCUSSION

The State asserts two points on appeal. First, the State claims the court erred granting summary judgment in favor of the City because under the plain language of the relevant statutes, the claim for reimbursement is not authorized. In point two, the State argues the trial court erred in granting summary judgment in favor of the City because Section 84.345.2 prohibits

4

reimbursement for any claims after the September 1, 2013 transfer to local control and the claim in this case was not presented until 2017. Our review of point two is dispositive; therefore, we do not consider point one.

<u>*Standard of Review*</u>

Our review of the trial court's decision to grant summary judgment is *de novo*. *State ex rel. Schmitt*, 639 S.W.3d at 542 (citing *Holmes*, 624 S.W.3d at 148); *see also ITT Comm. Fin. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993)). Summary judgment is proper only if the moving party establishes there is no genuine issue of material fact **and** the movant is entitled to judgment as a matter of law. *Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020) (internal quotation omitted) (emphasis added). We will affirm the judgment where the moving party is entitled to judgment as a matter of law on the basis of the undisputed facts. *State ex rel. Schmitt*, 639 S.W.3d at 542 (citing *Holmes*, 624 S.W.3d at 148); Rule 74.04(c)(6).[4]

Our review is limited to only those issues presented to the trial court. *Bracely-Mosley v. Hunter Eng'g, Co.*, 662 S.W.3d 806, 821 (Mo. App. E.D. 2023) (citing *Rapp v. Eagle Plumbing, Inc.*, 440 S.W.3d 519, 523 (Mo. App. E.D. 2014)); *see also Green*, 606 S.W.3d at 119 n.7 (internal quotation omitted). We will not convict a trial court of error on an issue not presented to it for consideration. *Id*.

<u>*Analysis*</u>

On appeal, the State argues the SLEF statutes do not authorize the City's claim for reimbursement for its payment to settle the motion for sanctions. In response, the City contends that under Section 84.345.2, reimbursement can continue for claims made after the September 1,

---

[4] All references to Rules are to Missouri Supreme Court Rules (2023).

2013 transfer of power as long as the claim resulted from actions occurring before that date. On appeal, the City also advances an alternative argument that the relevant date to assert a SLEF claim in this matter is 2012 when Daughter filed her wrongful death suit, prior to the return to local control on September 1, 2013. We agree with the State.

We first considered the City's argument that the date of the conduct invokes SLEF liability in the post-opinion motions for *City of St. Louis v. State*, 699 S.W.3d 503 (Mo. App. E.D. 2024).[5] There, the City sought reimbursement from SLEF for its payment to discharge a judgment entered against a City police officer in an underlying civil rights action against an officer for conduct related to an arrest. *Id*. at 504-05. The incident occurred in 2012, but the arrestee did not file suit until November 2016. *Id*. at 504. Our court, following the Missouri Supreme Court's interpretation of a similar statute in *Holmes*, held the "legally significant" date for purposes of a SLEF claim does not arise until the filing of the suit. *Id*. at 506 (citing *Holmes*, 624 S.W.3d at 155)). There, as in *Holmes*, we found the "legally significant" event establishing SLEF compensation occurred when the suit was filed in November 2016, and "well after the September 1, 2013 completion of transfer to local control," thus precluding reimbursement. *Id*.

The City again contends our holding in *City of St. Louis* misapplies the Supreme Court's rationale in *Holmes*, ignores legislative intent, and is inconsistent with the basic principles of statutory construction. The City advocates that upon reading the relevant statutes, it is clear the legally significant event referred to in Section 84.345.2 is the date of the action or conduct upon which the claim is based. We have carefully considered these arguments once more and respectfully decline to adopt the City's contorted statutory interpretation. Instead, we continue to rely on Missouri Supreme Court precedent in *Holmes*, which interpreted a substantially similar

---

[5] The City's application for transfer was denied by the Missouri Supreme Court on November 19, 2024.

statutory provision concerning direct claims, as well as on our own application of *Holmes* to reimbursement claims in *City of St. Louis*, 699 S.W.3d at 506.

Section 84.345.2 states, in relevant part, that "[f]or ***any claim***, lawsuit, or other action ***arising out of actions*** occurring before the date of completion of the transfer provided under subsection 2 of Section 84.344 . . . the state legal expense fund shall continue to provide reimbursement for such claims under section 105.726." (emphasis added). This language is similar to that in Section 105.711.2(2), which provides that "[m]oneys in the state legal expense fund shall be available for the payment of ***any claim*** . . . ***upon conduct of such officer*** or employee arising out of and performed in connection with his or her official duties on behalf of the state . . . ." (emphasis added). Both statutes first provide SLEF coverage upon "any claim." In applying the principles of statutory construction, the *Holmes* Court held the "legally significant" date for a SLEF claim was when a suit is filed and not the conduct underlying it. *Holmes*, 624 S.W.3d at 155. Moreover, we find no merit in the City's argument that the reference first to "any claim" and "arising out of actions" found within the reimbursement provision is so different from the same initial reference to "any claim" and thereafter to the "upon conduct of such officer" in the repayment language that we must apply a different analysis to reimbursement than the *Holmes* Court applied to direct claims when determining what coverage SLEF continues to afford the City relief from its legal obligations.

Next we consider the alternative argument the City now raises on appeal that the relevant date of the claim in this case is Daughter's 2012 filing of the wrongful death suit, which predates the transfer of local control to the City. First, we note in its own motion for summary judgment before the trial court, the City pled that in October 2019, it paid $250,000 to "discharge a claim for sanctions" filed by Daughter on December 18, 2017, and seeks no relief relevant to the 2012

suit. The City did include a vague reference to the underlying suit in its statement of uncontroverted facts, and the date it was filed is undisputed by the State; however, "[t]he key to a summary judgment is the undisputed right to a judgment as a matter of law; not simply the absence of a fact question." *Ferbet v. Hidden Valley Golf and Ski, Inc.*, 618 S.W.3d 596, 602 (Mo. App. E.D. 2020) (internal quotations omitted). This mere assertion of fact did not raise any argument to the trial court, nor does it establish a legal right to SLEF reimbursement in the record before us to consider 2012 as a date relevant to the "claim." As previously noted, we will not convict the trial court of error on an issue not presented for its consideration. *Bracely-Mosley*, 662 S.W.3d at 821; *see also Green*, 606 S.W.3d at 119 n.7 (internal quotation omitted).

Second, even if the City properly raised and preserved any such right to judgment as a matter of law, the argument is defeated by the uncontroverted fact that Daughter's December 2017 motion, while related to the discovery conducted in the original suit filed in 2012 and settled in June 2013, was a separate claim for misconduct committed during discovery. Daughter asked the court to punish the Board and the Attorney General pursuant to federal rules of procedure or the court's inherent authority to impose sanctions without disturbing the underlying wrongful death settlement. The subsequent litigation and settlement of the Board's discovery malfeasance was exactly the "claim" as pled in the City's motion for summary judgment.

In conclusion, the summary judgment record shows neither party disputed that the claim which resulted in the City's settlement payment was filed with Daughter's motion to re-open discovery and for sanctions in December 2017. This was "well after the September 1, 2013 completion of transfer to local control . . . ." *City of St. Louis*, 699 S.W.3d at 506. As a result, Section 84.345.2 precludes reimbursement for the City's payment to settle Daughter's 2017 claim regarding discovery malfeasance in her 2012 wrongful death case. *See id.*

We hold SLEF was not obligated to reimburse the City for its payment of $250,000 to settle Daughter's claims of misconduct during discovery. Therefore, the trial court erred in granting summary judgment in favor of the City.

## CONCLUSION

The judgment of the motion court is reversed and remanded for entry of judgment in favor of the State.

_____
Lisa P. Page, Presiding Judge

Rebeca Navarro-McKelvey, J., and
Virginia W. Lay, J., concur.

9